**Harrison VINSON, Appellant,**

v.

**AMERICAN BUREAU OF SHIPPING, GlobalSantaFe Drilling Corporation, GlobalSantaFe Corporation, GlobalSantaFe Offshore Services, Inc., GlobalSantaFe Operations, National Oilwell L.P., National Oilwell Varco, L.P., and National Oilwell Norway, A.S. (f/k/a Hydralift A.S.A.), Appellees.**

No. 01–08–00922–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 8, 2010.

---

12. Like *Simmang*, the dispatcher did not identify when the tipster called in the tip.

36

Cortlan H. Maddux, John C. Schwambach Jr., Stevenson & Murray, P.C., Houston, TX, for Appellant.

Bryan Patrick Vezey, Gene F. Creely, II, Joseph A. Ziemianski, Cozen O'Connor, J.D. Page, Attorney at Law, Robert Glen Moll, Steven P. Vangel, Hill Rivkins L.L.P., Timothy W. Strickland, Fowler, Rodriguez, Chalos, Flint, Gary, McCoy, O'Connor, Sullivan & Carroll, L.L.P., Houston, TX, Michael D. Wilson, Hill Rivkins LLP, New York, NY, for Appellees.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

**38**

## OPINION

TERRY JENNINGS, Justice.

Appellant, Harrison Vinson, challenges the trial court's order dismissing, under the doctrine of forum non conveniens, his personal injury lawsuit against appellees, American Bureau of Shipping ("ABS"); GlobalSantaFe Drilling Corporation, GlobalSantaFe Corporation, GlobalSantaFe Offshore Services, Inc., and GlobalSantaFe Operations (collectively, "GlobalSantaFe"); and National Oilwell L.P., National Oilwell Varco, L.P., and National Oilwell Norway, A.S. (F/K/A Hydralift A.S.A.) (collectively, "NOV"). In three issues, Vinson contends that this Court lacks jurisdiction over this appeal because the trial court's order dismissing his lawsuit against all appellees does not dispose of all other parties and claims that were before the trial court, the trial court abused its discretion in dismissing his lawsuit under the doctrine of forum non conveniens, and the trial court's order dismissing his lawsuit violates his right to a jury "by forcing him to litigate in a country without American constitutional protections." [1]

We deny the motions to dismiss the appeal, reverse the trial court's order dismissing Vinson's lawsuit against appellees, and remand for proceedings consistent with our opinion.

## Background

In his petition, Vinson alleges that he suffered personal injuries while working as a crew member aboard the DEVELOPMENT DRILLER I ("DDI"), a semi-submersible drilling rig, when a derrick on the DDI failed and collapsed. GlobalSantaFe owned and operated the DDI, and NOV and ABS, along with other parties, designed, manufactured, assembled, marketed, and sold the derrick, which Vinson contends was "unreasonably and dangerously defective." Vinson asserts claims for products liability, negligence, Jones Act [2] negligence, unseaworthiness, and maintenance and cure against appellees and others.

NOV filed its motion to dismiss Vinson's lawsuit under the doctrine of forum non conveniens, [3] arguing that Texas has "no legitimate connection with the controversy" because Vinson was a resident of Alabama, Vinson sustained his injuries aboard the DDI in a shipyard in Singapore, all but one of the named defendants are foreign entities, and Vinson had received medical treatment in Singapore. NOV asserted that Singapore provides a remedy for Vinson's personal injuries, access to proof is easier in Singapore, and Singapore has the most significant relationship to the controversy and an interest in determining liability. NOV also asserted that "all defendants" in the lawsuit agreed to submit to the jurisdiction of Singapore courts and to waive the statute of limitations to allow Vinson to refile his claims there. In support of its motion, NOV attached the affidavit and deposition of Michael Kucharski,

---

1. Vinson has filed a motion to dismiss the appeal, arguing that the trial court's dismissal order is not a final appealable order because it failed to dispose of all parties and claims. NOV has also filed a motion to dismiss the appeal, arguing that it is "well settled" that a forum non conveniens dismissal is interlocutory. Thus, Vinson and NOV contend that the appeal should be dismissed for different substantive reasons. ABS has filed a response to Vinson's motion to dismiss, arguing that the trial court's judgment is appealable, and GlobalSantaFe has filed responses to both Vinson's and NOV's motions, arguing that the trial court's judgment is final and that forum non conveniens dismissals are appealable.

2. 46 U.S.C.A. § 30104.

3. *See* TEX. CIV. PRAC & REM.CODE ANN. § 71.051 (Vernon 2008).

GlobalSantaFe's director of the semi-submersible building program and the building of the DDI, as well as an affidavit of Jason Lim, an advocate and solicitor in Singapore.[4] ABS and GlobalSantaFe joined in NOV's motion, but did not file any separate evidence.

In his response to NOV's motion to dismiss, Vinson asserted that Houston is the forum with the most significant connection to the lawsuit. He noted that GlobalSantaFe, who was his employer and the owner and operator of the DDI, is based in Houston and the DDI is currently working in the Gulf of Mexico. Vinson asserted that appellees negotiated and signed relevant contracts regarding the building of the DDI in Texas, Kucharski lived in Houston, GlobalSantaFe had hired the Houston office of Det. Norske Veritas ("DNV Houston") to investigate the derrick collapse, the relevant persons and documents pertaining to the investigation are located in Houston, there are no persons with any significant knowledge regarding the derrick collapse and the subsequent investigation in Singapore, and there is no relevant evidence related to the construction of the DDI or the derrick collapse in Singapore. Vinson stated that all of his medical care, other than his brief initial emergency room visit in Singapore, occurred both in Alabama and Houston and much of his medical care was coordinated through GlobalSantaFe's Houston office. Vinson attached as evidence to his response a letter from GlobalSantaFe's Houston office authorizing maintenance payments to him, his medical records from the Singapore emergency room visit, Kucharski's deposition, correspondence from Global SantaFe representatives in Hous-

ton regarding medical care provided to Vinson in Houston, and documents showing that certain DNV Houston personnel are located in Houston offices.

The trial court granted NOV's motion and dismissed "Vinson's causes of action" pursuant to the conditions that appellees agree to waive the statute of limitations to allow Vinson to refile his suit in Singapore and to submit to the jurisdiction of Singapore courts. The trial court also stated, "This is a final appealable judgment" and "[a]ll relief not expressly granted is denied." Vinson filed a motion to modify judgment and a motion for new trial, which the trial court denied.

After the trial court dismissed Vinson's lawsuit, an entity, which Vinson and appellees refer to as "Bailey," filed a special appearance and answer subject thereto. Although Vinson had named Bailey as a defendant in his petition, Bailey had not appeared or answered in the lawsuit prior to the dismissal and the overruling of Vinson's motion for new trial. Thus, Bailey was not identified as a party joining in NOV's motion to dismiss, the evidence the parties presented in regard to the dismissal did not concern Bailey in any significant detail, and the trial court did not include any reference to Bailey in its dismissal order or require Bailey to agree to submit to the jurisdiction of Singapore courts or waive limitations.

The trial court, in support of its dismissal order, entered findings of fact and conclusions of law, in which it "noted" that Vinson was an Alabama resident injured on a vessel undergoing construction in a shipyard in Singapore; GlobalSantaFe was a Cayman Island company; Bailey, which manufactured and designed the derrick,

---

4. NOV also referred to Vinson's deposition in its motion to dismiss, but NOV concedes that Vinson's deposition does not appear in the appellate record. Because Vinson's deposi-

tion does not appear in the appellate record, we do not consider Vinson's deposition testimony as evidence on appeal.

was a Dutch company; and employees of JSL Shipyard, a Singapore company, were testing the derrick when it collapsed. It also noted that Vinson's "point of origin" was Alabama, he did not travel through Texas to or from his employment, and he lived in Singapore at the time of the accident. The trial court also stated that "all of the fact witnesses to the accident who were present in or about the time of the accident are located in Singapore and/or they are from various other parts of the world (and not Texas)," Vinson received medical treatment in Singapore before returning home to Alabama and receiving further medical treatment, and "it was only after [Vinson] retained an attorney in Houston that he was referred by his attorneys to a doctor in Houston, who he saw on only two occasions over two years ago." The trial court also concluded that Vinson did not qualify as a Jones Act seaman because he was not injured aboard a "vessel in navigation."

In summary, the trial court concluded that Singapore, "where the accident occurred, where the fact witnesses to the accident have been located, and where [Vinson] first received medical treatment," provides a remedy to Vinson; it is an adequate alternative forum; and a Singapore court could "best apply applicable Singapore law."

### Appealable Order

At the outset, we note that both Vinson and NOV have filed motions to dismiss this appeal. In his first issue, Vinson states that he filed his notice of appeal "out of an abundance of caution" and argues that this Court does not have jurisdiction over his appeal because the trial court's dismissal order did not dispose of all parties. NOV

asserts that "the grant of a forum non conveniens dismissal is an interlocutory order that is not appealable."

### NOV's Motion to Dismiss the Appeal

■ In support of its motion to dismiss the appeal,[5] NOV relies upon *Martinez v. Bell Helicopter Textron, Inc.*, 49 S.W.3d 890 (Tex.App.-Fort Worth 2001, pet. denied). In *Martinez*, the Fort Worth Court of Appeals considered a trial court's order dismissing the case for forum non conveniens "pending the outcome of the resolution of this dispute in the Courts of the Republic of Colombia." *Martinez v. Bell Helicopter Textron, Inc.*, 49 S.W.3d 890, 891 (Tex.App.-Fort Worth 2001, pet. denied). The trial court had stated in its dismissal order that it maintained "continuing jurisdiction over the parties so as to assist in the resolution of any discovery disputes that may arise between the parties and for which the Colombian Courts do not provide an adequate, convenient method of resolution." *Id.* Based upon this statement, the court of appeals concluded that the order was "interlocutory and not a final judgment." *Id.* The court did not state that forum non conveniens dismissal orders are generally non-appealable. The trial court's dismissal order in the instant case does not contain a provision similar to the one discussed in *Martinez*. NOV also cites *Fowler v. Fowler*, No. 10–01–294–CV, 2004 WL 68106 (Tex. App.-Waco Jan. 14, 2004, no pet.) (mem. op.). However, *Fowler* represents one of the only, if not the only, Texas case to have stated, in general terms, that "[a] ruling on a plea of forum non conveniens is not an appealable order." *Fowler*, 2004 WL 68106, at *2. In support of this general statement, *Fowler* cites only *Martinez*, which is substantively distinguishable. *Id.*

---

**5.** GlobalSantaFe agrees with Vinson that forum-non-conveniens dismissals are appealable.

■ We conclude that to the extent that *Fowler* and *Martinez* could be construed to hold that forum non conveniens dismissal orders are generally not final appealable orders, *Fowler* and *Martinez* go against the great majority of Texas and federal authorities indicating the contrary. *See, e.g., VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex.1993) (remanding case to court of appeals for determination of appeal of trial court's order granting forum non conveniens dismissal); *Signature Mgmt. Team, LLC v. Quixtar, Inc.,* 281 S.W.3d 666, 673 (Tex.App.-Dallas 2009, pet. filed) (reviewing, and reversing, trial court's forum non conveniens dismissal); *Lalila v. Parker Drilling Co.,* No. 01–07–00281–CV, 2009 WL 618248, at *6 (Tex. App.-Houston [1st Dist.] Mar. 12, 2009, pet. denied) (mem.op.) (reviewing, and affirming, trial court's forum non conveniens dismissal). Although most, if not all, of the Texas cases reviewing forum non conveniens dismissal orders lack any significant discussion of the general ability to appeal such orders, we conclude that "[t]he appealability of forum non conveniens dismissal orders is so well established, and so much in conformity with the ordinary rule that dismissal of an entire action is final, that most appeals are decided without commenting on jurisdiction." *See* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3914.12, at n. 23 (3d ed.2009) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)); *see also Abad v. Bayer Corp.,* 563 F.3d 663, 665 (7th Cir.2009) (stating that "dismissal of a case on grounds of forum non conveniens is deemed a final judgment appealable . . . even though it does not end the litigation"); 32 AM.JUR.2D *Federal*

*Courts* § 1359 (2010) (stating that granting of forum non conveniens motion is final appealable judgment "even when the order of dismissal is conditional").[6]

Accordingly, we deny NOV's motion to dismiss the appeal.

### Vinson's Motion to Dismiss the Appeal

In response to Vinson's argument that this Court lacks jurisdiction over this appeal, NOV asserts that Bailey's special appearance did not affect the finality of the order and "[t]he fact that the dismissal order does not mention Bailey does not matter if it is clear, as here, that the trial court intended to dispose of the entire case."

NOV, GlobalSantaFe, and ABS, the only defendants who had answered and appeared in the lawsuit at the time NOV filed its motion to dismiss, all joined the motion and agreed to waive limitations and submit to the jurisdiction of the Singapore courts to allow Vinson to refile there. In granting the motion to dismiss, the trial court cited appellees' stipulations, expressly dismissed "Vinson's causes of action" without any limitation, and stated, "This is a final appealable judgment" and "[a]ll relief not expressly granted is denied."

Only after the trial court had ordered the dismissal of all of "Vinson's causes of action" in what it intended to constitute a final, appealable judgment, and only after the trial court had denied Vinson's motions to modify judgment and for new trial, did Bailey, for the first time, file its special appearance, asserting that the trial court lacked jurisdiction over it.

■ The special appearance filed by Bailey did not, as asserted by Vinson, have

---

6. Conversely, it is well settled that a party may not appeal an order denying a motion to dismiss a forum non conveniens and that "[m]andamus is appropriate to remedy an improper denial of a motion to dismiss for forum non conveniens." *In re Omega Protein, Inc.,* 288 S.W.3d 17, 19–20 (Tex.App.-Houston [1st Dist.] 2009, orig. proceeding).

the effect of destroying the finality of the trial court's dismissal order, which disposed of all of Vinson's claims pending before the trial court. We recognize that the Texas Supreme Court has explained that "[a]n order does not dispose of all claims and all parties merely because" the words "final" and "appealable" appear in the order. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). We also recognize that the order in this case does not have the exact language suggested by the supreme court as providing "no doubt" as to the finality of a judgment. *See Lehmann*, 39 S.W.3d at 205–06 (suggesting, "This judgment finally disposes of all parties and all claims and is appealable"). However, the supreme court in *Lehmann* also explained that "a judgment issued without a conventional trial is final for purposes of appeal if "either it actually disposes of all claims and parties *then before the court*, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Id.* at 192–93. A judgment is final "if it disposes of *all pending parties and claims in the record.*" *Id.* at 195. The supreme court noted that "whether a judicial decree is a final judgment must be determined from its language and the record in the case." *Id.* at 195, 205–06. We conclude, based upon the language used by the trial court in dismissing Vinson's causes of action without any limitation, as well as our review of the entire record in this case, that the trial court's forum non conveniens dismissal order is final and appealable.

We deny Vinson's motion to dismiss the appeal and overrule his first issue.

### Forum Non Conveniens

In his second and third issues, Vinson argues that the trial court erred in dismissing his lawsuit under the doctrine of forum non conveniens because "the record is devoid of any probative evidence that Singapore would be a more convenient forum than Houston or that maintaining the lawsuit here would work a substantial injustice on [NOV], GlobalSantaFe and ABS." He further argues that Houston is actually the most convenient forum because NOV, GlobalSantaFe, and ABS have their headquarters here, most of the relevant fact witnesses are in Houston, and all relevant documents are in Houston. He asserts that the trial court's dismissal would require him to pursue his claims in Singapore, where none of the critical witnesses reside and which does not provide the right to trial by jury.

■■■ We review a trial court's decision about whether to dismiss a case under the doctrine of forum non conveniens for an abuse of discretion. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex.2008). A court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *Id.*

■■■ The Texas Civil Practice and Remedies Code provides,

If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court may consider whether:

(1) an alternate forum exists in which the claim or action may be tried;

(2) the alternate forum provides an adequate remedy;

(3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

(4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 3.04, 2003 Tex. Gen. Laws 847, 854 (amended 2005) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 71.051 (Vernon 2008)). After the Legislature amended section 71.051 in 2003, section 71.051 no longer "contain[ed] language placing the burden of proof on a particular party in regard to the factors" and did not "require that a party prove each factor."[7] *In re*

*Gen. Elec. Co.*, 271 S.W.3d at 686. Rather, section 71.051 "simply requires the trial court to consider the factors, and it must do so to the extent the factors apply."[8] *Id.* at 687. Moreover, "[t]o the extent evidence is necessary to support the positions of the parties, the trial court must base its findings and decision on the weight of the evidence, and certainly is entitled to take into account the presence or absence of evidence as to some issue or position of a party." *Id.*

### Adequate Alternative Forum

■ We first consider whether Singapore offers an adequate alternative forum. Tex. Civ. Prac. & Rem.Code Ann. § 71.051(b)(1)-(2). Vinson argues that Singapore is not an adequate alternative forum primarily because it deprives him of "his constitutionally guaranteed right to a jury trial," and he complains that dismissing his case to Singapore would result "in an American citizen being forced to pursue his claims against three Houston-based businesses [NOV, GlobalSantaFe, and ABS] and a Norwegian corporation [Bailey] in Southeast Asia under Singaporean law."

■ "Ordinarily, an alternate forum is shown if the defendant is 'amenable to process' in the other jurisdiction." *In re*

---

7. Some courts continue to state that it remains the defendant's burden to prove that the balance of factors strongly favors the defendant's choice of forum. *See In re Williams Gas Processing Co.*, No. 14–07–01026–CV, 2008 WL 257275, at *1 (Tex.App.-Houston [14th Dist.] Jan. 31, 2008, orig. proceeding, mand. denied) (mem.op.). This point of law derives from the seminal case on forum non conveniens. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (stating that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). The Texas Supreme Court, in a 2007 plurality opinion, also recognized that "[t]he doctrine of forum non conveniens has

always afforded great deference to the plaintiff's forum choice," although the doctrine "generally affords substantially less deference to a nonresident's forum choice." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675 (Tex.2007).

8. Section 71.051 was amended in 2005 to provide that "when determining whether to dismiss an action based on forum non conveniens, a trial court 'shall' consider" the factors specified in section 71.051(b). *In re Gen. Elec. Co.*, 271 S.W.3d 681, 686 (Tex.2008). Prior to the 2005 amendments, section 71.051 provided that a trial court "may" consider the factors. *Id.*

*Gen. Elec. Co.,* 271 S.W.3d at 688 (citing *Piper Aircraft Co.,* 454 U.S. at 254 n. 22, 102 S.Ct. 252). Moreover, "[t]hat the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight." *In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670, 678 (Tex.2007). Although "[t]here may be circumstances where an alternate forum is not adequate because the remedies it offers are so unsatisfactory that they really comprise no remedy at all," "comparative analyses of procedures and substantive law in different forums should be given little weight in forum non conveniens analysis because such analyses pose significant practical problems." *In re General Elec. Co.,* 271 S.W.3d at 688. Accordingly, "a comparative analysis of the procedures, rights, and remedies" available in Texas and Singapore "should only be given weight" if Singapore "would in substance provide no remedy at all." *Id.; see also In re Pirelli Tire, L.L.C.,* 247 S.W.3d at 678 (stating that "an alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court") (citations omitted); *Gomez de Hernandez v. Bridgestone/Firestone North American Tire, L.L.C.,* 204 S.W.3d 473, 483 (Tex. App.-Corpus Christi 2006, pet. denied) (stating that "primary consideration is whether the alternate forum entitles appellants to a remedy for their losses, even if compensation for their injuries is less than what may be awarded in a Texas court").

Here, NOV, GlobalSantaFe, and ABS have all consented to condition the forum non conveniens dismissal upon their waiving of the limitations bar and submitting to the jurisdiction of Singapore courts. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(c). NOV, in support of its motion to dismiss, attached an affidavit from Jason Lim, an advocate and solicitor in Sing-

apore and a partner in a law firm in Singapore, who testified that Singapore has a common law system modeled on the English system, Singapore courts have jurisdiction over personal injury claims when defendants have submitted to the jurisdiction of the courts, the judge in Singapore courts is the "arbiter of both facts and law," and a successful plaintiff in a tort or negligence action in Singapore "can expect to recover damages, interests, and costs" in an amount determined by the court. We conclude that NOV presented evidence demonstrating that Singapore would allow Vinson "some recovery" for the personal injuries he sustained and, thus, that Singapore constitutes an adequate alternative forum. *See Berg v. AMF Inc.,* 29 S.W.3d 212, 217 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (concluding that because Canadian law would allow some recovery, appellees demonstrated adequate remedy under Canadian law).

In regard to Vinson's complaint about the lack of the right to trial by jury in Singapore, we recognize that in *In re General Electric,* the Texas Supreme Court, in analyzing whether state and federal courts in Maine provided an adequate alternative forum for the plaintiff's claims, noted that the courts in the alternative forum were similarly bound to afford the plaintiff the rights to a jury trial and due process under the Constitution. 271 S.W.3d at 689 (citing U.S. CONST. amend. VII, amend XIV, § 1). Based, in part, upon these considerations, the supreme court concluded that Maine courts and a federal multi-district litigation panel to which the case could eventually be assigned fell "within the Legislature's intent that the alternate forum be one 'in which the claim or action may be tried.'" *Id.* (citing TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(b)(1)). However, the reasoning of the supreme court in *In re General Electric* does not compel the

conclusion that a forum is inadequate simply because it does not guarantee a plaintiff the right to a jury trial, even if that plaintiff is an American citizen. Rather, the right to a jury trial is one of several factors that may be considered by a court in determining the adequacy of an alternate forum. Additionally, other persuasive authorities indicate that the lack of the right to a jury trial does not, by itself, necessitate a finding that an alternative forum is inadequate. *See Zermeno v. McDonnell Douglas Corp.*, 246 F.Supp.2d 646, 659 (S.D.Tex.2003) ("Neither discovery limitations nor the lack of a jury trial in a foreign forum makes that forum inadequate."); *Tjontveit v. Den Norske Bank ASA*, 997 F.Supp. 799, 807 (S.D.Tex.1998) (lack of jury trial does not render remedy inadequate); *see also* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3828.3, at 689 (3d ed.2009) (stating that bar for establishing that alternative forum is adequate "historically has been quite low" and that "absence of the right to a jury trial ... normally will not prevent dismissal").

***Private and Public Interest Factors***

 We next consider the balance of the relevant private and public interest factors. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(b)(5). The private interest factors that are to be generally considered are the ease of access to proof, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining willing witnesses, the possibility of viewing the premises, and other practical problems that make a trial easy, expeditious, and inexpensive. *In re Gen. Elec. Co.*, 271 S.W.3d at 691 (citing *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839); *In re Omega Protein, Inc.*, 288 S.W.3d 17, 20 (Tex.App.-Houston [1st Dist.] 2009, orig. proceeding). Generally, the public interest factors to be considered are the administrative difficul-

ties related to court congestion, burdening the people of a community with jury duty when they have no relation to the litigation, local interest in having localized controversies decided at home, and trying a case in the forum that is at home with the law that governs the case. *In re Gen. Elec. Co.*, 271 S.W.3d at 691 (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839); *In re Omega Protein, Inc.*, 288 S.W.3d at 21.

NOV asserts that "for most of the relevant evidence of liability and damages in this case, Singapore is the forum with the most ease in access of proof," the evidence regarding the derrick failure and the derrick repairs are located in Singapore, and "Texas has no means of ready access to those sources of proof." NOV does not provide citations to the record to support these assertions, and these assertions are not borne out by the record before us.

Kucharski, GlobalSantaFe's director of the DDI, testified that the files and documents relating to the DDI, the collapse of the derrick, and the subsequent investigation are located partly at GlobalSantaFe's building on Memorial Drive in Houston and partly at a storage facility "somewhere" in the United States. Kucharski also stated that the documents are under GlobalSantaFe's control and accessible in Houston. In fact, Kucharski disagreed with the assertion that "almost all of the evidence or sources of proof relating to the construction of the DDI and the investigation following the failure" of the derrick are located in Singapore. When asked whether a person who visited the Singapore shipyard where the DDI was constructed would see any evidence of the DDI, Kucharski responded, "Hopefully not." It is undisputed that in 2005, following the accident and repairs, the DDI sailed to the Gulf of Mexico.

Kucharski further testified that he knew of no remaining physical evidence located in Singapore, but NOV stresses that Kucharski also confirmed that none of the physical evidence related to the derrick collapse was brought back to Houston. Specifically, when asked if any evidence was salvaged and kept in Singapore, Kucharski stated that he "believe[d] some of it was," and he stated that NOV had taken some of the equipment to a facility in Singapore. However, he conceded that he did not know if any such evidence still existed and he had "no idea" where any pieces of the derrick were actually located. Although he admitted that NOV had become the owner of the property, NOV did not present any evidence, nor did it even specifically assert, that salvaged pieces of the derrick still existed and, if so, that they remain in Singapore.[9]

Vinson concedes that his original medical records from his emergency room visit following the incident are located in Singapore. However, those records total five pages, copies have been produced to appellees in this case, and they are in the record before us. Vinson also cites to evidence in the record showing that, after the incident, GlobalSantaFe arranged for Vinson to come to Houston to receive medical treatment from GlobalSantaFe's company doctor and to be seen at a pain care center in Houston. Vinson notes that his medical records, other than his minimal records from the emergency room visit, are located in Alabama and Texas, not Singapore.

In regard to the location of witnesses, NOV refers to Vinson's deposition as proof that "almost all of the witnesses that Vinson considered relevant [are] in Singapore." As stated above, Vinson's deposition does not appear in the record before us, so we cannot consider these references on appeal. NOV also cites Kucharski's deposition in support of its argument that the location of witnesses favors Singapore. First, NOV notes that Kucharski testified that the witnesses to the incident were in Singapore "at the time" of the accident. But, NOV does not cite to any evidence that the witnesses in the shipyard at the time of the incident who would also likely be trial witnesses are still located in Singapore. Our inquiry focuses on the parties' ability to obtain evidence and testimony from potential witnesses with knowledge relevant to Vinson's claims. See Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988). We do not focus on the physical location of the witnesses at the time of the incident.

NOV also refers us to a chart that it created of "every witness mentioned" by Kucharski in his deposition. In its chart, NOV separates those witnesses who live in Houston from those who do not. NOV asserts that its chart displays that "most of the potential witnesses do not reside in Houston and are outside the subpoena range of a Harris County district court," but NOV does not identify any unwilling, non-party witnesses in its briefing. We note that to the extent NOV's chart includes unwilling, non-party witnesses, many of the witnesses identified as being outside of the subpoena range of a Harris County district court would also be outside the subpoena range of a Singapore court. Additionally, NOV, in its chart, does not

9. NOV asserts that "to the extent" any evidence would be needed from the shipyard companies or personnel that supplied the rigging and the barge or from the company that performed the repairs for NOV, the relevant records would be located in Singapore. However, nothing in the record indicates that any such evidence would be needed. In fact, as discussed below, Kucharski stated that no one in Singapore employed by the shipyard had any relevant knowledge of the collapse, and he also noted that shipyard personnel had not even been interviewed during the investigation.

indicate why many of the alleged "potential witnesses" would even be called to provide testimony at trial. *See Van Cauwenberghe*, 486 U.S. 517, 528, 108 S.Ct. 1945, 1953 (stating that to examine relative ease of access to sources of proof and availability of witnesses, court must scrutinize substance of dispute to evaluate proof required and to determine whether "pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action"). NOV's implied assertion that all of the witnesses identified in its chart would need to be deposed or called at trial to offer testimony relevant to Vinson's claims is contradicted by Kucharski's testimony.

Kucharski, who works for GlobalSantaFe at its corporate headquarters in Houston and who lives in Cypress, Texas, testified that he worked from Houston as the program director involved in building the DDI at the time of the incident. Kucharski traveled from Houston to Singapore approximately one week per month during the building of the DDI, and he was at the shipyard at the time the derrick collapsed. Kucharski confirmed that he would be the "most knowledgeable" person regarding the "construction, collapse, and repair of the DDI." During this time, Kucharski reported to Pharr Smith, who also worked at GlobalSantaFe in Houston and who continued to live in Houston at the time of Kucharski's deposition. During the building of the DDI, Kucharski supervised a small team of technical advisers located in Houston as well as a construction team that worked in Singapore. Kucharski explained that all the GlobalSantaFe personnel involved in the DDI project had since left GlobalSantaFe, except for he and Smith. He stated that the project manager lived in the United Kingdom, two of the discipline engineers lived in Singapore, the operations manager lived in Australia, and the rig manager lived in Alabama. Nevertheless, Kucharski reiterated that he was the person most knowledgeable on the relevant matters.

Kucharski further testified that, following the derrick collapse, he hired DNV Houston to investigate the cause of the collapse and conduct a root cause analysis. Charles McCardy, Kucharski's primary contact at DNV Houston, and Richard Helmersson, who conducted the root cause analysis for DNV Houston, were both located in Houston at the time of the investigation. Kucharski believed that both men remained in Houston at the time of his deposition. Kucharski identified another DNV consultant, Norman Dyer, who was located in Houston at the time of the incident and who had verified the DNV report.[10] Kucharski further stated that, in addition to the report and root cause analysis prepared by DNV, he also hired DNV to do a "total independent design verification of the derrick." This involved a totally different department and different DNV group of people also located in Houston. Vinson notes that all of these Houston based witnesses are critical to his claims, are within subpoena range of the trial court to the extent they are unwilling witness, are "easily available" in Houston, and the cost of their attendance at a Harris County District Court would be modest. Vinson also notes that the medical providers he saw through GlobalSantaFe are located in Houston.[11]

---

10. Kucharski agreed that Helmersson used local DNV Singapore employees to augment the investigation and that DNV Singapore was retained to perform destructive testing and that the personnel that did the destructive testing analysis were in Singapore.

11. All of these Houston-based witnesses, including Kucharski, are omitted from NOV's

In regard to the personnel from the shipyard identified by NOV, Kucharski testified that because these persons were not directly involved in the design, engineering, or fabrication of the derrick, "there was no relevance" in discussing those issues with those shipyard personnel. Kucharski agreed that there is no one in Singapore employed by the shipyard company that has any relevant knowledge of the collapse, and DNV did not even interview any shipyard personnel in conducting its investigation. Kucharski conceded that he knew of no persons in Singapore who were involved in the design or fabrication of the derrick. He also disagreed with the assertion that "almost all of the witnesses with knowledge about the DDI, its construction, [and] the derrick failure" are located in Singapore. When asked if there is any evidence from the investigation that the condition of the barge or the rigging in the shipyard had anything to do with the incident, Kucharski replied, "[a]bsolutely not."

NOV asserts that it was "not required to identify specific witnesses or evidence" that it would be unable to obtain in a Texas forum in order for the case to be dismissed to a Singapore forum. In *In re General Electric,* the supreme court stated that "detail regarding which witnesses would be called and what evidence would be unavailable is not necessary in a case such as this where the practical problems of trying a personal injury case hundreds of miles from the scene of the occurrence, the place where the lay witnesses reside, and where most other evidence is located is manifest." 271 S.W.3d at 691. But, *In re General Electric* involved a lawsuit brought by a life-long Maine resident who claimed injury resulting from asbestos exposure while working at a job site in Maine for over a thirty year period; the defendants in that case sought a dismissal to Maine. *Id.* Moreover, the plaintiff's treating physicians, co-worker witnesses, and family members all resided in Maine. *Id.* Faced with these facts, the supreme court determined that the case had "no relationship to Texas" and that evidentiary and practical problems with a Texas forum were manifest. *Id.* The alleged practical problems of Texas as a forum for this case, unlike those referred to in *In re General Electric,* are not manifest. In fact, the record directly contradicts NOV's assertion that a Texas forum would hinder the "fundamental need" of reasonable access to witnesses and evidence.

NOV further argues that "Texas cannot compel the attendance here of unwilling witnesses, and because the cost of attendance here of willing witnesses is prohibitive, this factor also weighs heavily in favor of Singapore as the proper forum." However, NOV has not identified or provided any evidence regarding the relevant testimony to be provided by any non-party unwilling witnesses, and NOV does not explain how the cost of attendance of willing, party witnesses is "prohibitive." The record before us reveals that the most relevant witnesses, including Vinson, Kucharski, and DNV Houston personnel, reside in Houston or in the United States.

chart of potential witnesses that NOV asks us to consider in balancing the private interest factors. Additionally, NOV's chart splits the list of "potential witnesses" into two categories of those of who live in Houston and those who do not. It implies that the overwhelming number of potential witnesses who do not live in Houston weighs heavily against the Houston forum, even though many of the witnesses identified in the chart who do not live in Houston also do not live in Singapore, and presumably would also be beyond the subpoena range of a Singapore court. Moreover, one of the witnesses that NOV identifies as not living in Houston is Vinson himself, who lives in Alabama. A Houston forum is manifestly more convenient than Singapore for Vinson, an Alabama resident.

*See Signature Mgmt. Team, LLC*, 281 S.W.3d at 673 (noting that movant failed to identify "unwilling witnesses who are beyond the subpoena power" and also failed to "introduce any evidence attempting to quantify the additional witness expense that a Texas forum would entail"); *In re Williams Gas Processing Co.*, No. 14–07–01026–CV, 2008 WL 257275, at *2 (Tex. App.-Houston [14th Dist.] Jan. 31, 2008, orig. proceeding, mand. denied) (mem.op.) (noting that movant's proof did not address whether witnesses would testify voluntarily, whether it would be burdensome for any witness to travel to Texas, costs associated with obtaining witnesses' in Texas, or any difficulty in accessing proof in Texas). The record also reveals that witnesses employed by appellees, at least at GlobalSantaFe, frequently traveled back and forth between Texas and Singapore.

In regard to a view of the premises, it is undisputed that the DDI, the location of Vinson's injury, sailed in March 2005 from Singapore to the Gulf of Mexico, where it currently remains. Vinson and appellees agree that a view of the DDI is likely unnecessary in this case, and the record before us indicates that the most relevant evidence concerning the cause of the derrick collapse will likely be provided by Kucharski and DNV Houston personnel.[12] However, Vinson asserts that, if a view of the DDI ultimately proves to be helpful, it could be done more easily from Houston than from Singapore.

Finally, in regard to all other alleged practical problems, NOV cites evidence showing that Singapore uses the English language, which would preclude any translation problems. Other than this one argument, NOV again generally asserts that "witnesses and sources of proof are not in Texas" and "most witnesses and proof are in Singapore." Again, the record before us simply does not support these assertions.

■ In sum, Kucharski's deposition testimony and other evidence in the record establish that most of the relevant documents and witnesses in this lawsuit are located in Houston and the United States and that many of the critical witnesses, including Kucharski and DNV personnel, are located in Houston. It is also undisputed that Vinson is a United States citizen residing in Alabama, he was hired by a company with a Houston headquarters to work on the DDI in Singapore, and Vinson worked on a project being supervised by a person located in Houston. The record indicates that Vinson received at least some medical treatment in Houston, and the only evidence in the record regarding his medical treatment in Singapore shows that he was initially seen in a Singapore emergency room. Kucharski also provided undisputed testimony that personnel from the Singapore shipyard have no knowledge of the relevant facts pertaining to the derrick's collapse, which is the alleged cause of Vinson's injuries and the basis for Vinson's claims against appellees. The record also shows, and the parties agree, that there would be no need for the fact finder to view the Singapore shipyard and that the DDI itself sailed to the Gulf of Mexico after the incident. Accordingly, we conclude that the private interest factors weigh heavily in favor of the Texas forum.

■ In regard to the public interest factors, there is no evidence in the record regarding any administrative difficulties related to court congestion. In regard to local interest, NOV asserts that "Texas has no local interest in a personal injury

---

12. In the trial court, NOV argued that a view of the Singapore shipyard favored Singapore. However, it has dropped this argument on appeal.

suit brought by a resident of Alabama for injuries that occurred in Singapore" and that Singapore "has great interest in determining the liability of defendants for allegedly causing injuries in Singapore." Vinson counters that this dispute involves a suit brought by a United States citizen against three defendants that maintain their corporate headquarters in Houston, along with one Dutch company, for injuries that he sustained on a vessel that is currently located in the Gulf of Mexico. Vinson notes that there is "no allegation that any Singapore citizen or entity was negligent or responsible in any way" for Vinson's injuries.

The issue of which forum can claim to have a local interest in this case presents an interesting question that is unique from the authorities cited by the parties in their briefing. For example, in *In re General Electric Co.*, the supreme court determined that the private and public interest factors weighed in favor a Maine forum, but that case involved a plaintiff who was a life-long resident of Maine who sustained asbestos-related injuries at a jobsite in Maine, almost all of the evidence and witnesses were located in Maine, and it was undisputed that Maine law applied. 271 S.W.3d at 684. The court explained that Maine "undoubtedly [had] an interest in ensuring that its citizens [were] not exposed to hazardous materials" in a Maine workplace. *Id.* at 691.

In *In re Omega Protein, Inc.*, this Court considered a suit brought by a Virginia resident injured while working on a vessel that operated exclusively out of Virginia with a crew based in Virginia. 288 S.W.3d at 22–23. Moreover, the evidence presented in that case showed that all persons responsible for the manning, operation, and maintenance of the vessel were based in Virginia and the persons with the most knowledge of safety policies and procedures were based in Virginia. *Id.* We concluded that the suit had "no meaningful connection to Harris County or Texas" and that the case belonged in Virginia. *Id.*

In contrast, here, we are presented with claims brought by Vinson, a United States citizen and an Alabama resident, who was hired by GlobalSantaFe, a company with its corporate headquarters in Houston, to travel to Singapore and work on a vessel that is now located in the Gulf of Mexico. Vinson is also seeking recovery against NOV and ABS, corporations who similarly maintain their headquarters in Houston.[13] Additionally, Vinson received medical treatment in Houston, and evidence in the record shows that GlobalSantaFe, Vinson's Houston-based employer, was at least involved in arranging some of his treatment. Under the trial court's order, Vinson is now faced with the dismissal of his personal injury lawsuit to a foreign forum approximately ten thousand miles away, not simply another forum in the United States, like the alternative forums in *In re General Electric* and *In re Omega Protein*. And, although the loss of certain rights does not necessarily render

---

13. We recognize that the mere presence of a corporate headquarters is an insufficient basis for maintaining a Texas forum "when all of the other factors favor another forum." *See In re Omega Protein*, 288 S.W.3d at 23. Here, however, many of the above factors favor a Texas forum. Moreover, the location of GlobalSantaFe's corporate headquarters in Houston is more significant based upon Kucharski's testimony that he supervised the DDI program from Houston while traveling frequently between Houston and Singapore and that a significant amount of relevant evidence and witnesses are located in Houston. Vinson also cites evidence showing that NOV and GlobalSantaFe conducted settlement negotiations and executed settlement agreements in Houston of potential claims arising from the derrick collapse.

an alternative forum to be inadequate, our supreme court has considered the availability of a jury trial and other rights generally afforded to plaintiffs who are United States citizens in conducting a forum non conveniens analysis. *See In re Gen. Elec. Co.*, 271 S.W.3d at 692 (stating, in regard to alternative forum of Maine, that Maine state courts and the potential federal court forum "are subject to the federal Constitution and the rights it guarantees").[14]

Finally, in regard to choice of law, the parties primarily focus on whether Vinson is entitled to seek relief under the Jones Act. *See* 46 U.S.C.A. § 30104. NOV appears to agree that Vinson could have viable claims under the Jones Act, even though he was injured aboard a rig located in a Singapore shipyard, but for the fact that the rig was under construction and NOV, thus, contends that it was not a "vessel in navigation." NOV asserts that the trial court was required to consider the applicability of the Jones Act in conducting the forum non conveniens analysis because, if the Jones Act applied, the choice of law factor would either favor or mandate an American forum. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 662 (9th Cir.2009) (recognizing that applicability of Jones Act would foreclose dismissal as to American citizen for forum non conveniens based upon specific venue provision in Jones Act).

The trial court concluded that Vinson did not qualify as a Jones Act seaman because he was not aboard a "vessel in navigation." We agree that, in conducting the forum non conveniens analysis, the trial court was entitled to consider the applicability of the Jones Act. *See id.* The extremely limited record before us regarding the Jones Act issue indicates that the DDI was still undergoing construction in the Singapore shipyard at the time of Vinson's injuries and, under recent Fifth Circuit precedent, the DDI may not qualify as a vessel in navigation. *See Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 298–99 (5th Cir.2008). Although the applicability of the Jones Act may be an open question subject to additional discovery and argument upon remand, we conclude that the trial court's finding that the Jones Act did not apply, which it made in conjunction with its forum non conveniens analysis, is supported by the existing record.[15]

However, even though the trial court's conclusion regarding the Jones Act is supported by the existing record, the trial court's conclusions that Singapore law would apply and that it would have to "untangle problems in conflict of laws" between Texas and Singapore lacks support in the record. Generally a court must first identify a conflict of law which would necessitate that the trial court decide a choice of law issue. *See Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260 (Tex.App.-San Antonio 1999, pet. denied). Here, there is no evidence of a conflict of law between the forums on Vinson's general negligence claims. In fact, in its briefing, NOV ar-

---

**14.** Lim's affidavit establishes that Singapore does not have a jury system.

**15.** The United States Court of Appeals for the Fifth Circuit acknowledged that the United States Supreme Court's most recent Jones Act decision had "significantly enlarged the types of unconventional and special purpose watercraft that now must be considered vessels that might not have met the test before [*Stewart v. Dutra Construction Company*, 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005)]." *See Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 300 (5th Cir.2008). The parties, in post-submission briefing, have continued to argue about the potential applicability of the Jones Act to Vinson's claims.

gues that Vinson would "experience little difficulty in trying his case under Singapore law" because its legal system is modeled upon the English common law. Additionally, even if the trial court would be required to perform a choice of law analysis,[16] we conclude that the requisite test points toward to the application of Texas law, or least that a choice of law question would present a close call.[17] To the extent that there is a conflict and a choice of law question that needs to be untangled, either forum, Texas or Singapore, would likely have to undertake such an analysis.

NOV argues that it would be unfair to burden Texas citizens with jury duty because Texas has no significant connection to Vinson's claims. However, Vinson's employer is headquartered in Texas, Vinson received medical treatment in Texas, Vinson's employer conducted and supervised the DDI building program from Texas, the investigation of the derrick collapse was conducted by DNV Houston, and many of the critical witnesses and documents are located in Texas. Additionally, although Vinson is an Alabama resident, he is a United States citizen suing for injuries he sustained while working for a company headquartered in Houston. In sum, we conclude that the public interest factors weigh heavily in favor of a Texas forum.

### Remaining Considerations

■ The record does support a finding that because appellees have consented to jurisdiction in Singapore, dismissal of the suit would not result in unreasonable duplication of litigation. See TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(b)(6). However, the record does not demonstrate that appellees would suffer substantial injustice as a result of the trial of Vinson's claims in Texas. See TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(b)(3). Critical witnesses and documents are located in Texas, even if some witnesses are in Singapore. In fact, as noted above, the evidence in the record shows that NOV and GlobalSantaFe have already settled any claims between them arising from the derrick collapse in their Houston offices. Thus, we conclude that the remaining considerations favor a Texas forum.

In sum, having concluded that the public and private interest factors weigh strongly in favor of the Texas forum and that the remaining considerations largely favor a Texas forum, we hold that the trial court abused its discretion in granting appellees'

---

16. Although the trial court stated squarely in its conclusions that Singapore law would apply, it did not provide any detailed choice of law analysis and it did not identify a conflict of law.

17. Texas follows the "most significant relationship" approach of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW (1971). See Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex.1979). Under this test, a court considers (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. See id.; see also RESTATEMENT (SEC-

OND) OF CONFLICTS OF LAWS § 145 (1971). The resolution of the choice of law issue turns on the qualitative nature of those contacts as affected by the policy factors enumerated in section 6, which include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6 (1971); see also Gutierrez, 583 S.W.2d at 318–319.

motion to dismiss under the doctrine of forum non conveniens.[18]

We sustain Vinson's second issue.

## Conclusion

We reverse the order of the trial court dismissing Vinson's lawsuit under the doctrine of forum non conveniens and remand the case for further proceedings consistent with our opinion.

---

18. In our discussion of Vinson's second issue, we have briefly touched upon the argument in his third issue that the trial court's order dismissing his claims under the doctrine of forum non conveniens violates his right to a trial by jury "by forcing him to litigate in a country without American constitutional protections." In light of our holding sustaining Vinson's second issue, we need not directly address his third issue.