**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-40995
Summary Calendar
_____


RAYMUNDO CERRATO SOLANO

                        Plaintiff-Appellee

v.


GULF KING 55, INC; GULF KING SERVICES, INC; GULF KING 55 IN REM

                   Defendants-Appellants

_____


VICTOR MANUEL URBINA

                        Plaintiff-Appellee

v.


GULF KING 55 INC; GULF KING SERVICES, INC; GULF KING 49, IN REM;
GULF KING 49, INC
                   Defendants-Appellants

_____


ALFRED HODGSON DENIS

                        Plaintiff-Appellee

v.


GULF KING 49, INC; GULF KING SERVICES, INC; GULF KING, IN REM

                   Defendants-Appellants

_____


LARRY HANSACK
                        Plaintiff-Appellee


v.

GULF KING 50, INCORPORATED; GULF KING SERVICES, INCORPORATED; GULF KING 50, IN REM

                    Defendants-Appellants

        _____

MILTON PASOS

                    Plaintiff-Appellee

v.

GULF KING 46, INC; GULF KING SERVICES, INC; GULF KING 46, IN REM

                    Defendants-Appellants

        _____

MAURICIO WILLIS GUILLERMO

                    Plaintiff-Appellee

v.

GULF KING 50, INC; GULF KING SERVICES, INC; GULF KING 50 IN REM

                    Defendants-Appellants

        _____

ROY DERIH WILLIAM GUTIERRES

                    Plaintiff-Appellee

v.

GULF KING 51, INC; GULF KING SERVICES, INC

                    Defendants-Appellants

        _____

JOSE MARTINEZ YANES

                    Plaintiff-Appellee

v.

GULF KING 51, INC; GULF KING SERVICES, INC; GULF KING 51, IN REM

                    Defendants-Appellants

        _____

BENIGNO JIRON MENDEZ

Plaintiff-Appellee

v.

GULF KING 43, INC; GULF KING SERVICES, INC; GULF KING 43, IN REM

Defendants-Appellants

_____

GILBERTO GAMBOA

Plaintiff-Appellee

v.

GULF KING 39, INC; GULF KING SERVICES, INC; GULF KING 39, IN REM

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas

June 5, 2000

Before SMITH, BARKSDALE and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Ten plaintiff seamen brought work-related personal injury actions against defendant vessel owners under the Jones Act. Defendants (collectively "Gulf King") filed a consolidated motion for summary judgment claiming that Nicaraguan law governs the claims. The district court denied the motion, then certified the choice-of-law question for consolidated interlocutory appeal. We reverse.

**FACTS AND PROCEDURAL HISTORY**

In each of the ten consolidated cases, the plaintiff is a Nicaraguan citizen and domiciliary who filed a complaint seeking

damages for personal injuries, as well as maintenance and cure as a consequence of alleged injuries that occurred while working as a crew member on a Gulf King vessel. The claims arise from unrelated injuries occurring on different dates on various vessels owned by defendants. Each plaintiff has asserted causes of action based on the Jones Act, 46 U.S.C. § 688 (1994) and the general maritime laws of the United States; no plaintiff has asserted any action against any defendant based on the laws of Nicaragua or any other country.

Each plaintiff was hired in Nicaragua to work aboard one of the Gulf King vessels engaged in shrimping operations exclusively in the territorial waters of Nicaragua. The plaintiffs were paid with Nicaraguan currency, in Nicaragua for their work aboard the vessels, and all original payroll and employment records pertaining to their service aboard the vessels originated in Nicaragua. All decisions concerning Plaintiffs' employment aboard Gulf King vessels were made in Nicaragua. The Plaintiffs' alleged injuries all occurred within twelve nautical miles of the Nicaraguan shoreline.

All vessels involved in these cases have been located in Nicaragua since 1994, and have not returned to the United States or conducted fishing operations outside Nicaraguan territorial waters at any time relevant to these suits. The vessels have not been operating under general maritime principles of international commerce, but rather were operating under license, regulations and control of the Nicaraguan government. Although each vessel is

4

documented under the laws of the United States and flies the American flag, each vessel flies the Nicaraguan flag above the American flag, in accordance with Nicaraguan law. Nicaraguan-imposed regulations include the issuance of an annual license to take fish and shrimp from Nicaraguan territorial waters, the issuance of zarpe prior to each fishing trip restricting the scope and duration of that trip, physical safety inspections and vessel manning requirements, compensation and benefit obligations. The vessels are not subject to United States Coast Guard safety requirements or inspections.

Based on these facts, Gulf King moved for summary judgment and urged the district court to apply Nicaraguan law and dismiss all causes of action asserted by the Plaintiffs. Plaintiffs countered with additional facts, including that the owners of the Gulf King vessels are closely held Delaware corporations with their principal place of business in Aransas Pass, Texas. The owners of 96% of the stock of the corporations are United States citizens and Texas residents. Gulf King owns forty-three (43) shrimping vessels, thirty-four (34) of which operate exclusively in Nicaragua. The Nicaraguan Fleet Manager and Captains answered to and were in regular daily contact with Gulf King management in Texas. Gulf King financed its vessels primarily through two loans: one in the amount of $6,200,000.00 from the Small Business Administration and one in the amount of $15,000,000.00 from the United States Department of Commerce, National Marine Fishery Service. Because

5

both loans were made by United States agencies, Plaintiffs characterize Gulf King as "owing it all to United States taxpayers." Finally, 100% of the shrimp from the Nicaraguan vessels were imported to the United States and sold to American consumers.

**ANALYSIS**

We review the denial of summary judgment *de novo*. *See Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Summary judgment is proper if the evidence shows the existence of no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

The question of whether the Jones Act and the general maritime law of the United States apply or whether Nicaraguan law controls these maritime injury claims is governed by the Supreme Court trilogy of *Lauritzen v. Larsen*, 345 U.S. 571 (1953), *Romero v. International Terminal Operating Co*., 358 U.S. 354 (1959) and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970). In *Lauritzen*, the Supreme Court enumerated seven factors that bear on this choice of law question: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. *See* 345 U.S. at 583-90. *Lauritzen* taught that

6

courts should ascertain and value the enumerated points of contact between the transaction and the governments whose competing laws are involved. *See id.* at 582. *Lauritzen* stressed that the law of the flag is generally of cardinal importance, *see id.* at 584-86, and suggested that the last two enumerated factors should be given very little weight. *See id.* at 589-91. The list of seven factors in *Lauritzen* was not intended as exhaustive. *See Rhoditis*, 398 U.S. at 309. The "shipowner's base of operations is another factor of importance in determining whether the Jones Act is applicable; and there well may be others." *Id.* These eight factors have come to be known as the "*Lauritzen-Rhoditis* factors." *See, e.g.*, *Schexnider v. McDermott International, Inc.*, 817 F.2d 1159, 1161 (5th Cir. 1987). Each factor is to be weighed to determine whether all the factors add up to the necessary substantiality of contacts between the transaction at issue and the United States. *See Rhoditis, 398 U.S.* at 309 n. 4. Moreover, each factor must be tested in light of the underlying objective, which is to effectuate the liberal purposes of the Jones act. *See id.,* citing *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 441 (2d Cir. 1959). The district court correctly set out the eight factors gleaned from Supreme Court precedent and made the following findings as to their application.

The district court looked first to the law of the flag. *See Lauritzen*, 345 U.S. at 583 (emphasizing the "cardinal importance"

7

of the law of the flag).  The district court found that the law of the flag factor favors applying United States laws because the Gulf King vessels in question flew the American flag.  While each of the vessels flew the Nicaraguan flag as well, Plaintiffs offered testimony that the Nicaraguan flags served as an indication that the vessels were authorized to fish in Nicaraguan territorial waters, rather than a sign of Nicaraguan ownership or registration.

Second, the district court examined what it termed the "next most crucial factor," the base of operations factor from *Rhoditis*, 398 U.S. at 310.  In a preliminary ruling, the district court concluded that the overwhelming American flavor of Gulf King's operation favored application of American law.  *See Solano v. Gulf King 55, Inc.*, 30 F. Supp. 2d 960, 963 (S.D. Tex. 1998).  However, on reconsideration, the district court reversed itself, noting that the location from which a vessel's day-to-day operations are controlled is considered the base of operations, even where the defendant is a wholly owned subsidiary of an American corporation. *See Fogleman v. ARAMCO*, 920 F.2d 278, 284 (5th Cir. 1991).

The district court then listed three other factors that favored application of Nicaraguan law: (1) Plaintiffs are Nicaraguan citizens who maintain their residences in that country; (2) the place of the employment contracts was Nicaragua; and (3) the alleged wrongs occurred in the territorial waters of Nicaragua. Weighing in opposite those considerations, the district court found

8

that the allegiance of defendants to the United States favored application of American law.  Finally, the district court found that the two remaining factors – the accessibility of Nicaragua as a forum and the law of the forum – were not relevant to the determination.

The factors governing choice of law appeared closely divided to the district court, with the two factors traditionally considered the most important – choice of flag and base of operations – each favoring opposite conclusions.  The district court then found itself bound to consider the national interests to be served by the choice of American law, citing *Schexnider,* 817 F.2d at 1161.  The district court rejected Gulf King's argument that American interests would be served by the application of Nicaraguan law, which would reduce costs whenever one of their employees is injured on the job, thus making an American corporation more competitive in the international marketplace. Instead, the district court noted that Gulf King realizes substantial savings due to the low wages paid to the Nicaraguan seamen they employ and that Gulf King has a duty to provide for its employee's welfare.  The district court therefore found that "[i]t is certainly within the national interest that the United States government, which has propped up Defendants with . . . loans, not be perceived as officially or implicitly sanctioning the [ruthless exploitation of other countries' labor pools]."

On appeal, Gulf King challenges the district court's application of the *Lauritzen-Rhoditis* factors. The Supreme Court developed the factors in cases involving vessels engaged in commercial or maritime activities that traveled the high seas, passing through territorial waters of more than one nation. The weight accorded the choice of law factors in the context of those cases was dictated by the international nature of the vessels' regular activities, the fortuity of the location of the plaintiffs' alleged accident or injury and the need to establish a uniform, consistent law onboard a ship that traveled through waters of more than one sovereign nation. *See Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 87 (9th Cir. 1980). Accordingly, in the context of those cases, the Supreme Court gave substantial weight to the law of the flag and the allegiance of the defendant ship owner. *See id.* Subsequently, the Fifth Circuit has applied the *Lauritzen-Rhoditis* factors to cases where neither the seaman nor the vessel was engaged in traditional, blue-water maritime activities crossing through waters of competing nations. *See Chiazor v. Transworld Drilling Co.,* 648 F.2d 1015, 1019 (5th Cir. 1981), *overruled on other grounds, In re Air Crash Disaster*, 821 F.2d 1147, 1163 n. 25 (5th Cir. 1987). In *Chiazor*, the plaintiff brought suit to recover damages resulting from an accident which occurred on a submersible drilling rig off the Nigerian coast. *See id.* at 1016. Given the permanent location of the rig, we determined that "such

10

factors as place of wrongful act, allegiance or domicile of the injured and place of contract, which may be less substantial in the shipping context, tend to take on added significance under the present circumstances." *Id.* at 1019. In sifting through the factors and determining how to weigh them in a case involving a fixed drilling platform, we relied on the Ninth Circuit opinion in *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir. 1980). Like *Chiazor*, *Phillips* concerned an action for damages for personal injuries occurring on a drilling platform in Trinidad's territorial waters. *See id.* at 83-84. *Phillips* held that the law of the flag should not be accorded controlling weight and the allegiance of the defendant shipowner had diminished importance, while the place of the wrongful act, the allegiance and domicile of the plaintiff workers and the place of contract should be given greater weight. *See id.* at 87.

We conclude that the facts of this case are more analogous to an injury occurring on a fixed drilling platform than on a vessel in traditional maritime commerce. For that reason, we find that the district court erred in the weight it accorded the *Lauritzen-Rhoditis* factors in this case. When we discount the law of the flag and allegiance of the defendants factors which favor application of United States law, and accord more weight to the Plaintiffs' citizenship and residence, the place of the employment contracts and the place of injury, all of which were in Nicaragua,

11

it is clear that the calculus ultimately dictates application of Nicaraguan law.  We note, further, that the district court's assumption that the application of United States law would allow the Plaintiffs a more generous recovery, while almost certainly correct, was not a valid consideration in its choice-of-law analysis.  "The fact that the law of another forum may be more or less favorable to a plaintiff, however, does not determine choice of law." *Fogleman,* 920 F.2d  at 284.

## CONCLUSION

For the foregoing reasons, we reverse the district court's choice of law determination and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.

12