**Petition for Writ of Mandamus Conditionally Granted and Opinion filed January 31, 2012.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-11-00923-CV

## IN RE: BPZ RESOURCES, INC AND BPZ ENERGY, INC, Relators

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
152nd District Court
Harris County, Texas
Trial Court Cause No. 2008-74654**

## OPINION

On October 21, 2011, relators BPZ Resources, Inc and BPZ Energy, Inc. filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. §22.221; *see also* Tex. R. App. P. 52. In the petition, relators ask this court to compel the Honorable Robert Schaffer, presiding judge of the 152nd District Court of Harris County to vacate his order denying their motion to dismiss based on forum non conveniens. We conditionally grant the petition.

## I. Background

On January 30, 2008, a Peruvian-flagged oil tanker named the "B.A.P. Supe" ("Supe") exploded and sank in the waters off the coast of Peru. At the time it sank, the Supe was moored near a crude oil production platform named the CX-11. Two crewmen died from injuries as a result of the explosion and several more were injured. BPZ Exploracion y Produccion ("BPZ Peru"), a Peruvian company, owns the platform CX-11. Relator BPZ Energy, a Texas company, is the parent company of BPZ Exploracion y Produccion; relator BPZ Resources, Inc., a Texas company, is the parent company of BPZ Energy. Tecnomarine, a Peruvian company, provided the offshore support vessels and crew vessels and contracted with the Peruvian Navy to charter the Supe. On December 18, 2008, several of the crewmembers and their family members (real parties in interest) sued relators in the 152nd District Court in Harris County for injuries arising from the sinking of the Supe.

It is undisputed that a leak of crude oil on board the Supe caused the explosion. The Harbor Master in Peru appointed an independent expert to investigate the accident. According to the expert's report, the "wells which were producing crude oil were required to deliver a certain quantity of product each day to avoid being closed, and for this reason product was discharged from the wellheads . . . to the calibration tank located on the second level of the platform. In turn, from the calibration tank of the CX-11 platform, crude oil . . . was intermittently pumped to the BAP Supe 24 hours per day."[1]

On the night before the explosion, crew members noticed that the center hold of the Supe, which was not designed to store oil, had become flooded with crude oil. According to the independent expert, after inspecting the flooded center hold, a decision was made to "open the cargo hatch cover of the compartment and install air extractors to

---

[1] All quotations from the expert's report are from a translation of the report from Spanish into English. The report is in Spanish.

remove petroleum vapor in order to clear the compartment and remove the petroleum spilled inside." After sunrise the next day, the petroleum that had spilled into the center hold began to heat up, reaching a temperature higher than 35 degrees Celsius (95 degrees Farenheit). The expert concluded that the heating of the petroleum created "an atmosphere saturated with petroleum vapor." The expert stated that "[w]hen the main cover of the center hold was removed, air entered through the upper section of the compartment, mixing with the petroleum vapor, resulting in an explosive atmosphere inside the compartment." The expert concluded that the initial cause of the accident was "Breakage of the seal rings of the expansion joint of the commercial pipes of starboard tank No. 3 located inside the center hold of the ship before the access control valve of the pipes of the [starboard tank No. 3]." According to the expert, the causes of the fire were (1) the flooding of the center hold with crude oil, (2) formation of oil vapors due to the temperature of the crude oil being higher than the environmental temperature, and (3) entry of air into the center hold when the main hatch cover was opened, permitting sparks from the hydraulic arm motor to ignite the petroleum vapors.

On December 18, 2008, real parties, all residents of Peru, filed suit against BPZ Resources, Inc. and BPZ Energy, Inc. in Harris County for negligence in the explosion of the Supe. On May 19, 2009, relators filed a motion to dismiss on the basis of forum non conveniens. In their live petition, the real parties assert various personal injury and wrongful death claims against the relators. Alleging that the relators own the Supe, the real parties seek damages under general maritime law based upon the alleged unseaworthiness of the Supe. The real parties also assert negligence claims, including wrongful death and survival claims, based upon the alleged negligence of the relators. Relators allege the suit arose out of an incident that occurred within the territorial waters of Peru on a Peruvian Navy tankship, was brought by residents of Peru, and Peruvian law will apply. Relators further allege that four proceedings, both criminal and civil, arising from the incident, have either concluded or are on-going in Peru. They further cite the

3

inconvenience of the parties in traveling to Texas and the inability to subject unwilling witnesses to subpoena in Texas as reasons for dismissal of the Texas suit.

Real parties responded to relators' motion, arguing that they will ensure that all Peruvian witnesses have the means and ability to travel to Houston. They also assured the court that all documents will be translated from Spanish to English. Real parties argued that Peru is not an adequate alternative forum and that the acts of corporate officers in Texas caused the explosion in Peru. Real parties further argue that decisions made by corporate officers domiciled in Houston led to the accident. Real parties' theory of the case revolves around decisions made in Houston to step up production on the CX-11 platform. Real parties allege that relators made decisions to step up production, which required storage of more oil on the Supe than it was equipped to handle. Real parties allege relators did so despite evidence that the Supe was too old and ill-maintained to handle the extra load. They allege this is the true cause of the explosion.

The trial court denied relators' motion to dismiss. At the conclusion of the hearing, the attorney for the real parties asked the trial court if it would like proposed findings of fact and conclusions of law. The court stated it did not necessarily want proposed findings, but left the decision to the parties whether they wanted to submit proposed findings and conclusions. The mandamus record does not contain findings of fact and conclusions of law. Relators filed this original proceeding seeking mandamus relief, asserting the trial court abused its discretion because proper application of the forum non conveniens statute requires dismissal.

## II. Mandamus Standard

An appeal is not an adequate remedy when a motion to dismiss for forum non conveniens grounds is erroneously denied, so mandamus relief is available if it is otherwise warranted. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008). We review a trial court's refusal to dismiss on forum non conveniens grounds for abuse of discretion.

4

*Id.* A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Id.*

### *Waiver*

In their response, real parties raise a waiver issue and claim that the petition should be denied because relators' motion was not timely filed. The real parties assert that under Rule 86 of the Rules of Civil Procedure, the relators were required to file their motion to dismiss based on forum non conveniens with or before the filing of the relators' answer. But a motion to dismiss based on forum non conveniens is not a motion to transfer venue under Rule 86. *See* Tex. R. Civ. P. 86. Section 71.051(d) governs the timeliness of the relator's motion to dismiss based on forum non conveniens. *See* Tex. Civ. Prac. & Rem. Code Ann. 71.051 (West 2011). Under this statute, the relators had to file their motion to dismiss "not later than 180 days after the time required for filing a motion to transfer venue of the claim or action." *Id.* Rule 86 of the Rules of Civil Procedure requires filing of a motion to transfer venue "prior to or concurrently with any other plea, pleading or motion[.]"*See* Tex. R. Civ. P. 86. Relators filed their original answer on February 2, 2009, and their motion to dismiss on May 19, 2009, well within the 180-day time limit. Therefore, relators' motion was timely, and relators have not waived their claim of forum non conveniens.

## II.  Forum Non Conveniens

Section 71.051 of the Texas Civil Practice and Remedies Code governs the dismissal of a claim or action under the doctrine of forum non conveniens in personal-injury or wrongful-death cases filed in Texas courts.[2] In deciding whether "in the interest of justice" and "for the convenience of the parties" a claim or action would be more properly heard in another forum, the trial court must consider the six factors set forth in

---

[2] Unless otherwise specified, all statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

section 71.051(b), to the extent these factors apply.[3] *See In re General Elec. Co.*, 271 S.W.3d at 685–87.

Section 71.051(b) provides:

If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:

(1) an alternate forum exists in which the claim or action may be tried;

(2) the alternate forum provides an adequate remedy;

(3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

(4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

Tex. Civ. Prac. & Rem. Code § 71.051(b).

---

[3] Even though real parties have asserted claims under general maritime law, Texas law still applies as to issues of forum non conveniens regarding these maritime claims. *See American Dredging Co. v. Miller*, 510 U.S. 443, 453–54, 114 S. Ct. 981, 988, 127 L. Ed. 2d 285 (1994); *In re GlobalSantaFe Corp.*, 275 S.W.3d 477, 485 (Tex. 2008).

*A.  Adequate Alternate Forum; §71.051(b)(1) & (2)*

The first two factors in section 71.051(b) are: (1) whether an alternate forum exists where the claim may be tried, and (2) whether the alternate forum provides an adequate remedy.  *See* Tex. Civ. Prac. & Rem. Code § 71.051(b).  Relators assert that Peru is an adequate alternate forum as required by these factors.

## 1.  Existence of Alternate Forum Where Claims May be Tried

Relators admit they are not subject to personal jurisdiction in Peru, but agree, for purposes of this suit only, that they will submit to specific personal jurisdiction in Peru.  Real parties assert that the courts of Peru will not exercise jurisdiction over this case because the case was first filed in another jurisdiction.  Based upon an affidavit submitted at the hearing on the motion to dismiss, real parties argue that the Bustamante Code, which Peru follows,[4] establishes that the Texas court has exclusive jurisdiction over this case to the exclusion of all others, and that Peru will not accept jurisdiction.

Relators assert that if the dismissal is granted, it can be made contingent on the Peruvian court accepting jurisdiction. *See id.* § 71.051(c).  We conclude that Peru is an alternate forum in which this action may be tried based upon relators' agreement to submit to personal jurisdiction in Peru and as long as any dismissal order is made contingent on the Peruvian court accepting jurisdiction and provides for jurisdiction in Texas in the event Peru declines jurisdiction.  *See Torres v. Southern Peru Copper Corp.* 965 F.Supp. 899, 902–03 (S.D. Tex. 1996), *aff'd Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 544 (5th Cir. 1997).  We conclude that the first statutory factor weighs in favor of granting the relators' motion to dismiss based on forum non conveniens.

---

[4] Relators assert that the Bustamante Code does not apply to the case under review because the United States is not a signatory to the Bustamante Code and because that code states that it only applies between countries which are signatories to the Bustamante Code.

7

## 2. Adequate Remedy in Alternate Forum

An alternate forum does not provide an adequate remedy if the remedies it offers are so unsatisfactory they comprise no remedy at all. *Gen. Elec.*, 271 S.W.3d at 688. Real parties claim the Peruvian courts are inadequate because:

- The Peruvian Code of Civil Procedure limits parties to a maximum of three witnesses for each controversial fact and six in total.

- The Code further prevents any person having an interest in the case from being a witness.

- Peru is unsafe due to political unrest.

- The Peruvian judicial system is corrupt.

- There is no compulsory process in the Peruvian legal system, nor are depositions permitted.

Relators allege that the Peruvian courts provide adequate remedies in tort causes of action. They contend the Peruvian courts recognize a cause of action based on negligence and, in the case of death, dependents of the victim have the right to sue for damages.

The Texas Supreme Court has determined that a comparative analysis of procedures, rights, and remedies available in different forums is generally not appropriate in forum non conveniens analyses. *In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921, 924 (Tex. 2010). Such a comparative analysis is relevant to a court's forum non conveniens decision only if a potential transfer would effectively result in no available remedy at all. *Id; Gen. Elec.*, 271 S.W.3d at 688. *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). If the remedy provided by the alternative forum "is so clearly inadequate or unsatisfactory that it is no remedy at all," the court "may conclude that dismissal would not be in the interests of justice." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 254. In this case, both real parties and relators filed competing affidavits in support of their

8

arguments over the adequacy or inadequacy of Peru as an alternate forum. Relators cite several cases in which federal courts have found Peru is an adequate alternate forum. *See Torres v. Southern Peru Copper Corp.*, 965 F.Supp. 899, 902–03 (S.D. Tex. 1996), *aff'd*, 113 F.3d 540 (5th Cir. 1997); *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 877 (5th Cir. 1987); *Diaz v. Humboldt*, 722 F.2d 1216, 1219 (5th Cir. 1984).

Real parties argue the corruption of the Peruvian judicial system essentially deprives them of all remedies and makes Peru an inadequate alternative forum. They further argue that the state of political unrest in Peru also causes Peru to be an inadequate forum. The corruption argument will be addressed under this factor, but the issue of political unrest is best addressed as part of the balancing of public and private factors in favor of one forum over another. *See, e.g., Guidi v. Inter–Continental Hotels Corp.*, 224 F.3d 142, 145–48 (2d Cir. 2000) (plaintiffs' safety concerns should be considered as part of the weighing of conveniences); *Iragorri v. International Elevator, Inc.*, 203 F.3d 8, 13 (1st Cir. 2000) (safety concerns might better relate to balancing of interests).

In arguing that the Peruvian judicial system is so corrupt as to effectively provide them with no remedy at all, real parties presented evidence that in 2008, the U.S. State Department reported "Peru has an independent judiciary that theoretically enables citizens to bring lawsuits for violations of their rights; however, court cases have often dragged on for years, making it difficult for some plaintiffs, particularly those of limited economic means, to pursue legal redress."

To defeat a forum non conveniens motion, plaintiffs must show more than general allegations of corruption, lack of due process or other factors making an alternative forum unsuitable. For example, in *Rasoulzadeh v. Associated Press* 574 F.Supp. 854, 861 (S.D.N.Y. 1983), the court held that an alternative forum in Iran was not adequate because the courts there were administered by Iranian mullahs and the plaintiffs "would probably be shot" if they returned to Iran. In *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 78 F.R.D. 445, 455 (D. Del. 1978), the court found that Ecuador was not an

adequate forum since it did not have an independent judiciary. Courts controlled by a military junta in Chile were likewise found inadequate. *Canada Overseas Ores Ltd. v. Compania*, 528 F.Supp. 1337, 1342 (S.D.N.Y. 1982).

In *Eastman Kodak Co. v. Kavlin*, 978 F.Supp. 1078 (S.D. Fla. 1997), the court addressed whether corruption in Bolivian courts precluded application of forum non conveniens to allow trial of the matter in Bolivia. The court noted that "the 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record." *Id*. at 1084. In that case, however, plaintiffs not only presented evidence of corruption but also alleged that the defendant was "well-connected and ha[d] already used the criminal justice system to extort a commercial settlement from" one plaintiff, as well as to obtain criminal convictions of the plaintiff's employees. *Id.* at 1086. In that case, the court found that Bolivia was not an adequate alternative forum. *Id.* at 1087.

Other courts have rejected allegations of corruption or bias of a foreign forum as a means of preventing a forum non conveniens dismissal. *See, e.g. Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981 (2nd Cir.1993) (determining that, despite allegations of corruption, Venezuelan court was an adequate alternative forum); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1351 (1st Cir.1992) (deciding that Turkey was an adequate forum despite plaintiff's claim that Turkish courts were extremely biased against Americans and foreign women); *Stalinski v. Bakoczy*, 41 F.Supp.2d 755, 759 (S.D. Ohio 1998) (finding Honduras to be an adequate forum despite plaintiff's evidence of corruption in the court system there); *Torres*, 965 F.Supp. at 903 (determining that Peruvian judicial system was not so corrupt as to render Peru an inadequate forum).

In this case, real parties have not presented evidence that the Peruvian judicial system is so corrupt as to effectively provide them with no remedy at all. Therefore, a comparative analysis of the procedures, rights, and remedies available in Peru and Texas is not appropriate. *See In re Ensco Offshore Int'l Co.*, 311 S.W.3d at 924; *Gen. Elec.*,

10

271 S.W.3d at 688. We conclude that the second statutory factor weighs in favor of granting the relators' motion to dismiss based on forum non conveniens.

### B. *Substantial Injustice to Relators; § 71.051(b)(3)*

Relators assert that maintaining this suit in Texas will work a substantial injustice to them because it requires them to defend tort claims in Texas that arose in Peru. They point to the fact that most of the witnesses including the members of the crew of the Supe are residents of Peru and outside the subpoena power of a Texas court. Relators further emphasize that evidence regarding the accident has already been fully developed in the criminal action against the Supe captain. Relators presented evidence that the Harbor Master and the Peruvian Attorney General conducted investigations of the accident.

Real parties respond to relators' argument by asserting that it is not inconvenient for relators to defend this suit in their home jurisdiction. The witnesses necessary to prove how the operations of the platform were handled are located in Texas, the daily communications that authorized the operations came from Texas, Houston employees investigated the incident, and Houston companies were hired to work on the platform.

The supreme court has determined that "requiring parties to litigate a case . . . in Texas until it becomes clear that it is 'impossible' to defend the case due to unavailability of evidence and fact witnesses because they are beyond the reach of compulsory process is a waste of private and public resources." *General Elec. Co.*, 271 S.W.3d at 689, *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947).

Neither real parties, nor many witnesses in this case, are subject to compulsory process in Texas. Further, the real parties would have to obtain visas and, in the case of the crew members, permission of the Peruvian Navy to travel to Texas. Even though real parties could present witnesses they wish to call, relators could not present their witnesses. The lack of compulsory process in Texas for reaching the great majority of

11

witnesses would be substantially unjust. *See Ensco*, 311 S.W.3d at 925; *Gen. Elec.*, 271 S.W.3d at 689–90.

The third statutory factor weighs in favor of granting the relators' motion to dismiss based on forum non conveniens.

### C. Jurisdiction Over All Defendants; §71.051(b)(4)

The fourth factor is whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim. *See* Tex. Civ. Prac. & Rem. Code § 71.051(b)(4). As stated earlier, relators have agreed to submit to Peruvian jurisdiction for purposes of this case, and dismissal can be conditioned on the Peruvian court accepting jurisdiction. Based upon relators' agreement to submit to personal jurisdiction in Peru and as long as any dismissal order is made contingent on the Peruvian court accepting jurisdiction and provides for jurisdiction in Texas in the event Peru declines jurisdiction, we conclude that Peru is an alternate forum that can exercise jurisdiction over the relators. *See Torres,* 965 F.Supp. at 902–03; *Ensco*, 311 S.W.3d at 925–26; *Gen. Elec.*, 271 S.W.3d at 690–91. The fourth statutory factor weighs in favor of granting the relators' motion to dismiss based on forum non conveniens.

### D. Public and Private Interest; §71.051(b)(5)

Under the fifth factor, we consider whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in Peru, which includes consideration of the extent to which the personal injuries and deaths resulted from acts or omissions that occurred in Texas. *See* Tex. Civ. Prac. & Rem. Code § 71.051(b)(5).

#### 1. Public Interest Factors

Generally, the public interest factors to be considered are administrative difficulties related to court congestion, burdening the people of a community with jury

service when they have no relation to the litigation, local interest in having localized controversies decided at home, and trying a case in the forum that is at home with the law that governs the case. *Gen. Elec.*, 271 S.W.3d at 691.

Within the public interest factors, litigating the suit in the forum that is at home with the governing law is an important consideration. Here, there is a question of whether Peruvian or American law would apply. The question of whether United States or Peruvian law applies to these maritime-injury claims is governed by the United States Supreme Court trilogy of *Lauritzen v. Larsen,* 345 U.S. 571 (1953), *Romero v. International Terminal Operating Co*., 358 U.S. 354 (1959), and *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306 (1970). *See Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 426 (Tex. 1999); *Solano v. Gulf King 55, Inc.*, 212 F.3d 902, 905 (5th Cir. 2000). Under this trilogy, courts apply the following eight factors in the conflict-of-laws analysis: (1) the place of the wrongful act, (2) the law of the flag, (3) the allegiance or domicile of the plaintiffs, (4) the allegiance of the defendant, (5) the place of contract, (6) the inaccessibility of the foreign forum, (7) the law of the forum, and (8) the shipowner's base of operations. *See Solano*, 212 F.3d at 905. These factors are not exclusive and have come to be known as the "*Lauritzen-Rhoditis* factors." *See id*. Each factor is to be weighed to determine whether all the factors add up to the necessary substantiality of contacts between the transaction at issue and the United States.[5] *See id*.

Regarding the place of the allegedly wrongful acts, the personal injuries and deaths upon which the real parties base their suit occurred in Peru as a result of the explosion on the Supe in the territorial waters of Peru. The conduct of the commander of the Supe and BPZ Peru occurred in Peru.[6] The real parties have alleged that the relators

---

[5] The real parties agree that the *Lauritzen-Rhoditis* factors should be used to determine whether Peruvian law or American law applies.

[6] The real parties have alleged that BPZ Peru is an alter ego of relators and have sought to pierce the corporate veil between BPZ Peru and the relators. Nonetheless, the real parties have not provided evidence that would justify piercing BPZ Peru's corporate veil or treating it as the alter ego of the relators. Accordingly, we treat BPZ Peru as a separate legal entity for the purposes of the forum non conveniens analysis. *See BMC*

13

made decisions in Houston that were a cause of the explosion, allegedly ordering that production on their subsidiary's platform be "ramped up" to quickly generate needed cash, even though they allegedly knew that the operations involved dangerous procedures, insufficient equipment, and unseaworthy vessels. Presuming, without deciding, that this allegation is true, some of the allegedly wrongful conduct occurred in Texas, and this alleged conduct allegedly caused acts or omissions in Peru that allegedly resulted in the explosion, personal injuries, and deaths upon which these claims are based.

As to law of the flag, the Supe was a Peruvian-flagged vessel, owned and operated by the Peruvian navy, and under the command of real party in interest/plaintiff Fernando Carlos Paolillo Tapia, a Peruvian naval officer ("Paolillo"). BPZ Peru, a Peruvian company, owns platform CX-11, an oil production platform located in Peruvian territorial waters. To assist in activities related to the extraction of oil from its platform, BPZ Peru contracted with Tecnomarine, a Peruvian company, to provide various vessels. Tecnomarine time chartered the Supe from the Peruvian navy and provided the Supe to BPZ Peru.

Regarding the allegiance and domicile of the plaintiffs, real parties are 32 Peruvians who reside in Peru and representatives of the estates of two deceased Peruvians. The owner of the Supe is the Peruvian navy. Even if BPZ Peru is deemed to have time chartered the Supe, BPZ Peru is a Peruvian company. Relators are Texas corporations with their principal place of business in Texas.

As to the "place of contract," this factor refers to the place of the contract between the injured parties and the shipowner. *See Romero v. International Terminal Operating*

---

*Software Belgium, N.V., v. Marchand,* 83 S.W.3d 789, 798–99 (Tex. 2002) (holding that Texas law presumes that two separate corporations are distinct entities and that party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation); *Couch v. Chevron Intern. Oil Co.*, 672 S.W.2d 16, 18 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (declining to treat British subsidiary as alter ego of American parent company in forum non conveniens analysis, absent evidence in record supporting alter ego allegation).

14

*Co.*, 358 U.S. at 383; *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1174 (11th Cir 2009); *Solano*, 212 F.3d at 905. The place of any contract between the real parties and the Peruvian navy would be in Peru. There is no evidence of any contract between the real parties and the relators or between the real parties and BPZ Peru. The real parties argue that this factor addresses the place of the time charter of the Supe. Even if this were correct, the record reflects that the Supe was time chartered from the Peruvian navy by a Peruvian company in Peru.

As to the inaccessibility of the forum, as discussed above, the record reflects that Peruvian courts provide the real parties with a remedy. The real parties live in Peru and are able to litigate their claims in Peru. *See Miller v. Phillips Petroleum Co. Norway*, 537 A.2d 190, 199–200 (Del. 1988) (concluding that courts of Norway were not inaccessible in concluding that law of Norway applied under *Lauritzen-Rhoditis* factors).

The law of the forum is American law, but this factor is given little weight in the conflict-of-laws analysis. *See Fogleman v. ARAMCO,* 920 F.2d 278, 283 (5th Cir. 1991).

The Peruvian navy's base of operations is in Peru. There is no evidence that the Supe ever worked in United States waters. Even if the relators' corporate base of operations was in Texas, the evidence reflects that the base from which the Supe was operated on a day-to-day basis was in Peru. The day-to-day operations of BPZ Peru regarding the CX-11 oil production platform were conducted in Peru. *See id.* at 284.

Though the relators are Texas corporations who made allegedly negligent decisions that allegedly led to the explosion on the Supe, considering all of the *Lauritzen-Rhoditis* factors, we conclude as a matter of law that Peruvian law applies to the real parties' claims.[7] *See Solano*, 212 F.3d at 905–07 (holding as a matter of law that Nicaraguan law applied rather than American law to personal-injury claims brought by

---

[7] Even if we conducted the conflict-of-laws analysis under Texas principles, these principles are similar to the *Lauritzen-Rhoditis* factors, and we would reach the same conclusion under the Texas principles. *See Ensco*, 311 S.W.3d at 928.

15

Nicaraguan citizens allegedly injured in Nicaragua aboard vessels owned by American companies); *Ali v. The Offshore Co.*, 753 F.2d 1327, 1331–32 (5th Cir. 1985) (holding that the law of Trinidad applied to wrongful-death claims brought by widows of deceased citizens of Trinidad who died in the territorial waters of Trinidad aboard a drilling vessel owned by a Liberian company, an affiliate of various American companies who also were sued), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. On July 9, 1982*, 821 F.2d 1147, 1163–64 n. 25 (5th Cir. 1987) (en banc); *Koke v. Phillips Petroleum Co.*, 730 F.2d 211, 213, 218–20 (5th Cir. 1984) (holding that the law of Norway applied to personal-injury claims brought by British citizens injured in the territorial waters of Norway while working aboard a vessel owned by a Delaware corporation with its principal place of business in Dallas, Texas), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. On July 9, 1982*, 821 F.2d 1147, 1163–64 n. 25 (5th Cir. 1987) (en banc); *Miller*, 537 A.2d at 191, 195–201 (holding that the law of Norway applied to wrongful-death claims brought by survivors and representatives of deceased seamen who died in the territorial waters of Norway aboard a Norwegian-flagged vessel owned by a Norwegian company and bareboat-chartered to a Delaware corporation); *Couch v. Chevron Intern. Oil Co.*, 672 S.W.2d 16, 18 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding that trial court did not err in concluding American law did not apply to wrongful-death claims brought by Scottish survivors of a deceased Scottish crew member of a British-flagged vessel who died during operations in the North Sea). Because Peruvian law applies, Peru is the forum most at home with the law governing this case. *See Ensco*, 311 S.W.3d at 928.

Relators argue that the people of Texas should not be burdened with jury service when they have no relationship to the Peruvian plaintiffs or a Peruvian ship working off the coast of Peru. This litigation involves two corporate defendants based in Houston, Texas, and the real parties allege that the relators committed wrongful acts in Houston. Therefore, this litigation has some relation to the people of Harris County. Nonetheless,

16

we have concluded that Peruvian law applies, and the occurrence giving rise to the real parties' claims has a more substantial connection with Peru than it does Texas. The Texas Supreme Court has noted that a plaintiff's home jurisdiction usually has a strong interest in seeing its compensatory damages law applied. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000). We conclude that Peru has a strong interest in having this controversy decided at home in Peru.

The record contains a State Department report stating that cases in the Peruvian judicial system can sometimes "drag on for years." But this report does not state that this delay is related to court congestion. There appears to be little, if any, evidence in the record of administrative difficulties related to court congestion.

### 2. Private Interest Factors

The private interest considerations generally are considered to be the ease of access to proof, the availability and cost of compulsory process, the possibility of viewing the premises, if appropriate, and other practical issues affecting the ease, efficiency, and expense of trial. *See Gen. Elec.*, 271 S.W.3d at 691. Regarding relative ease of access to sources of proof, there is no allegation or proof of any eyewitness to the incident who resides in the United States. Unwilling witnesses in Peru cannot be compelled to testify in a Texas action. For those witnesses who are willing to testify in Texas, and who can obtain the necessary visas to do so, there will be costs in bringing them to Houston to testify, and housing and feeding them while here. The ease of access to proof by relators' agents and employees or by their business records is higher in Texas than in Peru. On the other hand, the ease of access to other proof regarding the occurrence made the basis of this suit, including third-party witnesses in Peru, is higher in Peru than in Texas. The explosion on the Supe has been investigated by Peruvian authorities, and Peruvian authorities are pursuing criminal prosecutions regarding this incident.

17

Peru does not have compulsory process for either witnesses or documentary evidence regardless of its source. In Texas, there is no compulsory process for the plaintiffs or witnesses from Peru.

Viewing the site of the explosion is not appropriate because the ship sank. According to real parties, video documentation was made of the accident site. Therefore, proximity to the accident site does not tip the scale either way.

As part of the balancing of private interests, we factor in the state of political unrest in Peru. In support of their argument that political unrest makes it unsafe to try this case in Peru, real parties presented evidence that several Amazonian tribes had staged violent protests in front of the Peruvian embassy in 2008 and 2009. Information from the State Department's website in June, 2010, stated that the "Shining Path" terrorist group is active, and "sporadic incidents of Shining Path violence have occurred in the recent past in rural provinces[.]" The report also noted that "usually peaceful" political demonstrations and labor-related strikes and marches regularly occur in urban and some rural areas, and can "escalate into violent confrontations."

Allegations of political unrest have generally been unsuccessful in courts' determinations that a foreign forum is inconvenient. In *Paolicelli v. Ford Motor Co.*, 289 Fed. Appx. 387, 391 (11th Cir. 2008), the court found that "absent evidence the political unrest has affected the Colombian judicial system or would affect litigation of this case, this fact is not sufficient to outweigh the other factors that weigh in favor of dismissal." In *In re Bridgestone/Firestone, Inc.*, 190 F.Supp. 1125, 1143–44 (S.D. Ind. 2002), the court found that political unrest including "physical threats to litigants and witnesses" was a factor in making trial there less convenient, but was not enough alone to conclude that Colombia was not a convenient forum.

In this case, despite the serious concerns raised by the real parties, they have not shown that, alone, the political unrest surrounding environmental protests causes Peru to be an inconvenient forum.

### 3. The Balance of the Private Interests and the Public Interest

The balance of the private interests of the parties and the public interest must include consideration of the extent to which the real parties' injuries resulted from acts or omissions that occurred in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.051(b). The conduct of Paolillo, the crew of the Supe, and BPZ Peru occurred in Peru. We presume, without deciding, that the relators made decisions in Houston that were a legal cause of the explosion when they allegedly ordered production on the platform to be "ramped up" to quickly generate needed cash, even though they allegedly knew that the operations involved dangerous procedures, insufficient equipment, and unseaworthy vessels. Under this presumption, the real parties' injuries would have resulted in part from acts or omissions that occurred in Texas. Nonetheless, these alleged acts and omissions in Texas would be a more remote cause of the real parties' injuries than the alleged acts or omissions in Peru of Paolillo, the crew of the Supe, and BPZ Peru.

After carefully considering the private interests and the public interest and the extent to which the injuries and deaths resulted from acts or omissions in Texas, we conclude that the balance of the parties' private interests and the public interest of the state predominate in favor of this action being brought in a Peruvian court. *See In re Ensco*, 311 S.W.3d at 926–28; *In Re Omega Protein, Inc.*, 288 S.W.3d at 21–23. We conclude that the fifth statutory factor weighs in favor of granting the relators' motion to dismiss based on forum non conveniens.

In making their argument that the public and private interest factors weigh in favor of jurisdiction in Texas, real parties rely on the factors found by the court in *Vinson v. American Bureau of Shipping*, 318 S.W.3d 34, (Tex. App.—Houston [1st Dist.] 2010, pet. denied). In that case, Vinson, an oil rig employee and Alabama resident, brought a

19

personal injury action in Texas for injuries incurred while working as a crew member aboard a drilling rig. *Id.* at 38. The trial court granted the defendant's motion to dismiss based upon forum non conveniens in favor of an alternate forum in Singapore, which is where the accident occurred. *Id.* at 40. The court of appeals analyzed the section 71.051 factors, found that most weighed in favor of a Texas forum, and reversed the trial court.

In *Vinson*, the plaintiff was injured on a drilling rig owned by a Houston company while the rig was operating off the coast of Singapore. *Id.* at 39. He was from Alabama, received emergency medical treatment in Singapore, but the rest of his medical treatment took place in Houston and Alabama. *Id.* Contracts for building the rig were negotiated and signed in Texas, and a Houston company was hired to investigate the accident. *Id.*

Real parties assert that the factors are similar in this case. They assert the contracts for negotiating the chartering and use of the Supe were approved by the company officers and board of directors located in Houston. The record reflects that decisions were made in Peru and in Houston with regard to the vessels, and all decisions are made with board oversight. The board is in located in the United States. A Houston company investigated the vessels before the explosion, but the Harbor Master in Peru appointed an independent expert in Peru to investigate the explosion after it occurred. One of the plaintiffs received burn treatment in Houston, and most of the plaintiffs' medical records are in Peru and are written in Spanish. In further contrast to *Vinson*, here the plaintiffs are all Peruvian citizens; in *Vinson*, no citizen of Singapore was alleged to have been responsible. *Id.* at 50. Also, in *Vinson*, no physical evidence remained in Singapore; even the rig had been moved to the Gulf of Mexico. *Id.* at 45-47. We do not find the court's decision in *Vinson* determinative in the balancing of factors in this case.

### E. Unreasonable Duplication of Litigation; § 71.051(b)(6)

Relators assert that rather than resulting in duplication or proliferation of litigation, dismissal will result in less litigation. There are three outstanding lawsuits in Peru.

Litigation is proceeding between BPZ Exploracion y Produccion, the Peruvian Navy, and Captain Paolillo in a civil action for damages. Further, Captain Paolillo was prosecuted in a criminal action in Peru. A conditional dismissal of the real parties' claims in Texas so that they can file these claims in Peru would not result in unreasonable duplication or proliferation of litigation. We conclude that the sixth statutory factor weighs in favor of granting the relators' motion to dismiss based on forum non conveniens.

### III. Conclusion

When all of the section 71.051(b) factors in a case favor the conclusion that an action would be more properly held in a forum outside Texas, as they do here, the statute requires the trial court to grant a motion requesting that it decline to exercise its jurisdiction. *See Gen. Elec.*, 271 S.W.3d at 693–94. The trial court's denial of the relators' motion to dismiss violated section 71.051(b) and was an abuse of its discretion. *See id.* We conditionally grant the petition for writ of mandamus. We are confident the trial court will vacate its order denying the motion, and will grant the relators' motion to dismiss contingent on the Peruvian court accepting jurisdiction, and providing for jurisdiction in Texas in the event Peru declines jurisdiction. The writ will issue only if the court fails to comply.


/s/    Martha Hill Jamison
Justice


Panel consists of Justices Frost, Seymore, and Jamison.