Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00207-CV

————————————

**ELLEN LUMENTA, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROY MEYERS REVELINO NAWAWI, DECEASED, Appellant**

**V.**

**BELL HELICOPTER TEXTRON, INC., BELL HELICOPTER CORPORATION, BELL HELICOPTER INTERNATIONAL SALES CORPORATION, BELL HELICOPTER INTERNATIONAL, INC., BELL HELICOPTER KOREA, INC., PRATT & WHITNEY, AND UNITED TECHNOLOGIES CORP., Appellees**

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2013-45235A

# MEMORANDUM OPINION

Appellant, Ellen Lumenta, individually and as personal representative of the estate of Roy Meyers Revelino Nawawi ("Nawawi"), deceased, challenges the trial court's order dismissing, under the doctrine of forum non conveniens,[1] her wrongful death and survival claims against appellees, Bell Helicopter Textron, Inc., Bell Helicopter Corporation, Bell Helicopter International Sales Corporation, Bell Helicopter International, Inc., Bell Helicopter Korea, Inc. (collectively, "Bell"), Pratt & Whitney ("Pratt"), and United Technologies Corporation ("United"). In four issues, Lumenta contends that the trial court erred in denying her motion for continuance, granting appellees' motion for protection from discovery, and dismissing her claims against appellees.

We affirm.

## Background

In her first amended petition, Lumenta, who is a citizen of the Republic of Indonesia, alleged that on August 30, 2011, her son, Nawawi, also a citizen of Indonesia, was a passenger on a helicopter that crashed on Dua Saudera Mountain in Bitung, North Sulawesi, Indonesia. She also alleged that the helicopter's avionics, power train, and instrumentation and navigational systems were defective, proximately causing the crash and the death of Nawawi, seven other

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 71.051 (Vernon 2008).

passengers, the pilot, and the engineer. Lumenta further alleged that Bell was responsible for the overall design, construction, and maintenance of the helicopter; Pratt was "secondarily responsible" for the engines; and, Honeywell and Northern Airborne Technology ("NAT")[2] were "responsible for the avionics, including an early warning system that should have warned the pilot[] of approaching dangerous obstacles, such as mountains, but utterly failed to do so." She asserted claims for products liability, negligence, and gross negligence against numerous defendants, including appellees.

Bell filed a motion to transfer venue and an answer subject thereto. In its motion to transfer, Bell argued that venue was not proper in Harris County because it was not a location of any of the defendants' principal offices, not the site of the "alleged wrong," and not where the helicopter was designed. Bell asserted that venue was proper in Tarrant County, Texas. In its answer, Bell generally denied the allegations. Pratt and United also answered, generally denying the allegations and asserting various affirmative defenses.

Subsequently, Bell filed a motion to dismiss Lumenta's claims under the doctrine of forum non conveniens (the "FNC motion"). In its FNC motion, Bell asserted that "Indonesia is an available, adequate, and alternate forum." And it argued that the private interests of the parties and the public interest of the state

---

[2] Honeywell and NAT are not parties to this appeal.

overwhelmingly favor presenting this case in Indonesia because Lumenta's claims "center on a series of events that occurred within the jurisdiction of the Indonesian courts and involve[] Indonesian citizens."

Bell noted that on August 3, 2011, Nawawi, an Indonesian citizen, "boarded a Bell Helicopter at Sam Ratulangi Airport (also known as, Manado International Airport) in Manado, North Sulawesi, Indonesia." Of the seven other passengers on board, three were Indonesian, two were Australian, and two were South African. The pilot and the engineer were also Indonesian. The helicopter, operated by PT Nyamen Air and chartered by PT Nusa Helmahera Mineral, both based in Indonesia, was bound for Gosowong, Halmahera Island, Indonesia. Minutes after takeoff, it crashed into the side of Dua Saudera Mountain in Bitung, North Sulawesi, Indonesia, approximately twenty-five kilometers southeast of the departure site. The Indonesian National Transportation Safety Committee (the "INTSC") investigated the site and recovered the wreckage, which remains in Indonesia.

Bell argued that Indonesia is the forum with the most significant contact with the lawsuit because Indonesia is the site of the crash; the helicopter wreckage; the pilot records and flight logs; and the maintenance records. Moreover, all the "key witnesses" are in Indonesia, including the INTSC representatives, who conducted the official investigation of the crash and recovery of the wreckage; the

Manado Airport employees, who tracked and communicated with the helicopter; the mechanics, who serviced the helicopter; and all the employees of the companies that owned, chartered, maintained, and operated the helicopter. Bell asserted that the "key witnesses and evidence" would be "beyond the subpoena power of any Texas court" and the "cost, time, and scheduling difficulties to obtain evidence and present witness testimony would be far greater if the case were tried in Texas."

In support of its FNC motion, Bell attached the INTSC's "Aircraft Accident Investigation Report," in which it concluded:

- The aircraft was airworthy prior to the accident and there was no pilot report of any system malfunction during the flight.
- The crew had a valid license and medical certificate.
- The pilot was fasting on the day of [the] accident.
- The aircraft flew via direct track to Gosowong, which was not a published VFR [Visual Flight Rules] route.
- The wreckage and impact analysis indicated that the engine, main and tail rotors were functioning properly during impact.
- The weather at the accident site prevented a flight [from being] performed under VFR.
- The flight was conducted under VFR while the weather was below the VFR minima.

The INTSC classified the collision as a "Controlled Flight into Terrain ('CFIT')," meaning that an "airworthy aircraft, under [the] control of the pilot, un-intentionally collided with terrain." Bell also attached to its motion the affidavit of

Ignatius Andy, a practicing attorney in Indonesia and an expert on Indonesian civil and commercial litigation, who testified that Indonesia is an adequate alternate forum in this case. Pratt and United joined Bell's FNC motion, but did not file separate evidence.

Bell, in conjunction with its FNC motion, filed a motion for protection, seeking to stay "merits discovery" pending the trial court's ruling on its FNC motion. Bell asserted that a stay was necessary to prevent undue burden and the unnecessary expense of participating in discovery on the merits before the trial court ruled on the threshold FNC issue, which could end the litigation. Pratt and United filed a motion in support of Bell's motion for protection.

In her response to appellees' collective motion for protection, Lumenta asserted that the Texas Rules of Civil Procedure provide that "discovery shall not be abated by [the] pendency of a motion to transfer venue."[3] And she argued that "all discovery" was relevant to the FNC motion because the parties needed to ascertain the "whereabouts of the wreckage" and "the key liability witnesses," "what they [were] going to testify to," and "any evidence of design defects, as well as the manufacturing and maintenance product defects [sic] of the helicopter." She asserted that the FNC motion would "take several years to resolve."

---

[3] *See* TEX. R. CIV. P. 88.

On December 16, 2013, the trial court, at a hearing on appellees' motion for protection, "grant[ed] the motion with regard to merits discovery on the case in its entirety, . . . except that for discovery related to forum non conveniens."

On February 6, 2014, Lumenta, in Texas, took the deposition of Harold Barrentine, a Bell safety investigator, who had previously flown to Indonesia at the request of the INTSC and assisted with the investigation of the crash. And, on February 7, 2014, Lumenta filed a verified motion to continue the hearing on appellees' FNC motion, which was set for February 10, 2014, in order to review Barrentine's testimony and respond to appellees' FNC motion.

Lumenta, on February 10, 2014, filed a response to appellees' FNC motion and a supplement to her motion for continuance. In her response, she asserted that Texas is the forum with the most significant connection to the lawsuit. And she argued that Indonesia "does not provide an adequate remedy at law and is not an adequate alternative forum" because the courts of Indonesia have held that they do not have jurisdiction over a lawsuit, as here, in which an "Indonesian citizen is injured or killed by the negligence or product defect of a non-resident corporation." Rather, the "Indonesian citizen must go to the domicile of the negligent foreign corporation . . . and sue them there." Lumenta further asserted that the relevant witnesses in this case are "[a]ll the American witnesses" who "handled the design, manufacture, sale and maintenance" of the helicopter, power train, and

instrumentation and navigational systems, and who "investigated the crash on behalf of appellees." She stipulated that she would "pay the cost of moving the wreckage from Indonesia to Texas for investigation and the trial" and use "only Texas-based experts."

In support of her response, Lumenta attached excerpts from the Central Jakarta District Court's judgments in *Rukmi Indah Indiarti v. Bell Helicopter Textron, Inc.*[4] She also attached a letter from Arthur B. Childers, president of Aviation Safety & Analysis of Washington, D.C., who recommended a "complete investigation" of the helicopter wreckage. Based on his review of all the information presented to him, Childers noted that there were "many reasons" for the crash. And he explained that it would be necessary to "examine the wreckage and interview the people associated with the manufacture, operation and maintenance of the helicopter, both in the United States and Indonesia." Childers opined that "there will most probably be a larger number of relevant witnesses who reside in the United States," but he noted that it was "too early to make a precise determination." In her supplemental motion for continuance, Lumenta requested ninety days to "prove up . . . the holding of the Indonesian Courts."

---

[4]      Civil Case Numbers 97 and 144, dated September 23, 2005 and November 20, 2008.

Also on February 10, 2014, the trial court granted appellees' FNC motion and dismissed Lumenta's causes of action against them. In a separate order, the trial court severed Lumenta's claims against appellees into the instant lawsuit.

**Forum Non Conveniens**

In her second, third, and fourth issues, Lumenta argues that the trial court erred in dismissing her claims against appellees under the doctrine of forum non conveniens because she will now have to pursue her lawsuit in Indonesia, which does not provide an adequate alternate forum, the pertinent private interest factors establish that Texas is the most convenient forum, and the pertinent public interest factors weigh in favor of Texas as the appropriate forum.

We review a trial court's decision to dismiss a case under the doctrine of forum non conveniens for an abuse of discretion. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008); *Vinson v. Am. Bureau of Shipping*, 318 S.W.3d 34, 42–53 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). A court abuses its discretion if its decision is arbitrary, unreasonable, or made without reference to guiding principles. *Gen. Elec.*, 271 S.W.3d at 685. In the absence of findings of fact and conclusions of law, as here,[5] we imply that the trial court found all facts necessary

---

[5] Although Texas Civil Practice and Remedies Code section 71.051 requires a trial court to issue findings of fact and conclusions of law, the record provided to us contains no such findings and conclusions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(f). And the record does not reflect that Lumenta requested findings

9

to support its decision so long as they are also supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

The Texas Civil Practice and Remedies Code provides,

If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court may consider whether:

(1) an alternate forum exists in which the claim or action may be tried;

(2) the alternate forum provides an adequate remedy;

(3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

(4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b) (Vernon 2008). Section 71.051

neither places the burden of proof on a particular party in regard to the above

---

or filed a notice of past-due findings. *See Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 232 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

factors, nor does it require that a party prove each factor. *Gen. Elec.*, 271 S.W.3d at 686. Rather, section 71.051 "simply requires the trial court to consider the factors, and it must do so to the extent the factors apply." *Id.* at 687. "To the extent evidence is necessary to support the positions of the parties, the trial court must base its findings and decision on the weight of the evidence, and certainly is entitled to take into account the presence or absence of evidence as to some issue or position of a party." *Id.*

***Adequate Alternative Forum***

Lumenta first argues that Indonesia is not an adequate alternative forum primarily because the courts of Indonesia will not adjudicate wrongful death claims against foreign defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(1)-(2).

"Ordinarily, an alternate forum is shown if the defendant is 'amenable to process' in the other jurisdiction." *Gen. Elec.*, 271 S.W.3d at 688 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 102 S. Ct. 252, 265 (1981)). "That the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 678 (Tex. 2007). Although "[t]here may be circumstances where an alternate forum is not adequate because the remedies it offers are so unsatisfactory that they really comprise no remedy at all," "comparative analyses of procedures and substantive

11

law in different forums should be given little weight in forum non conveniens analysis because such analyses pose significant practical problems." *Gen. Elec.*, 271 S.W.3d at 688. Thus, "a comparative analysis of the procedures, rights, and remedies" available in Texas and Indonesia "should only be given weight" if Indonesia "would in substance provide no remedy at all." *Id.*; *see also Pirelli Tire*, 247 S.W.3d at 678 ("[A]n alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.") (citations omitted); *Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 204 S.W.3d 473, 483 (Tex. App.—Corpus Christi 2006, pet. denied) ("[P]rimary consideration is whether the alternate forum entitles appellants to a remedy for their losses, even if compensation for their injuries is less than what may be awarded in a Texas court.").

Here, Bell presented the trial court with the affidavit of Ignatius Andy, who testified that he is licensed to practice law before all Indonesian courts, has spoken on choice-of-forum issues, and has served as an expert witness in products-liability cases and "on Indonesian Civil and Commercial Litigation law in various international judicial proceedings." Andy explained that an Indonesian party may submit a civil claim against a foreign party in an Indonesian court, Indonesian law does allow litigation of the subject matter of Lumenta's lawsuit, and it provides for

12

a remedy. He noted that Lumenta "may submit claims for product liability, negligence, or gross negligence" to the courts of Indonesia and recover actual and punitive damages.[6] Further, "Indonesian courts have jurisdiction of the witnesses and evidence in this case," and appellees are amenable to service of process, which may be accomplished through diplomatic channels.[7] Andy further explained that Lumenta's claims will not be barred by the Indonesian statute of limitations, which will expire in thirty years, and the Indonesian legal system affords numerous procedural safeguards, including adversarial presentation of oral and written evidence, provisions for compelling unwilling witnesses to testify, and appellate review. Andy noted that Indonesian courts follow the principle that "[t]he court

---

[6]   *See* Indonesian Consumer Protection Law No. 8 (1999); Indonesian Civil Law ("ICC"), arts. 1365 ("Every tort/unlawful act causing damage to another person shall oblige the person causing the damage to pay compensation."), 1366 ("Everyone shall be responsible not only for damage caused by his act, but also for damage caused by his negligence or imprudence."), 1367(1) ("Everyone shall be responsible not only for damage caused by his act alone, but also for damage caused by any person on his responsibility or goods under his supervision."), 1370 ("In the context of . . . negligence which causes death, . . . parents of the victim, who usually earn a living out of the deceased's earning, are entitled to claim for compensation . . . .").

[7]   *See* Circular Letter of the Chairman of the Supreme Court of the Republic of Indonesia (May 11, 1991); Guidelines of the Administration and Judicature Technical 21 (2007 ed.); Reglement op de Burgerlijke Rechtsvordering (Rv), art. 100 (providing, "[A] foreign party, who is a non-resident or who even does not hold any actual dwelling place in Indonesia may be claimed before Indonesian court in relation to his obligations . . . that must be performed in Indonesia or anywhere else to an Indonesian.").

shall assist the justice pursuer and strive to overcome all obstacles and barriers to achieve the implementation of [a] simple, quick, and low cost proceeding."[8]

Appellees noted that several United States District Courts have previously concluded, in regard to the doctrine of forum non conveniens, that Indonesia is an available and adequate alternate forum, "dismissing cases similar to the lawsuit at bar." *See, e.g.*, *Gonzales v. P.T. Pelangi Niagra Mitra Int'l*, 196 F. Supp. 2d 482, 489 (S.D. Tex. 2002) (concluding, in personal injury suit brought by Ecuadorian citizens against oil company headquartered in Texas for injuries sustained in Indonesia, that Indonesian courts provided an "available and adequate forum").

Lumenta asserts that "the Courts of Indonesia will not adjudicate this case." Rather, they "consistently hold" that when an Indonesian is "injured or killed as a result of the negligence or product defect of a foreign corporation," the "surviving Indonesian must sue the foreign [d]efendant in its domicile or home state." In support of her assertion, she directs us to excerpts, which she attached to her response to Bell's FNC motion, taken from the Central Jakarta District Court's judgments in *Rukmi Indah Indiarti v. Bell Helicopter Textron, Inc.*, Civil Case Numbers 97 and 144, dated September 23, 2005 and November 20, 2008. Lumenta asserted to the trial court below that the Jakarta District Court "expressly

---

[8] *See* Law No. 48, arts. 2, 4 (2009).

held that there is no remedy available to an Indonesian Plaintiff suing a foreign corporation for its negligence or product defect in the Indonesia Court," as follows:

> Considering, that speaking of the Court's competence to examine and adjudicate any civil case, the reference is to provision in Article 118 of HIR, that says that a suit should be filed in the domicile of the Defendants.

> Considering, that in the case *aquo* the Defendants are domiciled in the jurisdiction of the United States of America, in particular, in the [S]tate of Texas.

> Considering, that for that reason, the Central Jakarta District Court has no jurisdiction to examine and adjudicate the case *aquo* in harmony with the provisions of Article 118 of HIR.

We note that the excerpts of the judgments, which appear in the record attached to Lumenta's response, are missing pages and appear to be incomplete. Regardless, contrary to Lumenta's assertion, nothing in the language of the excerpts provided conclusively establishes that all Indonesian courts "expressly h[o]ld that there is no remedy available to an Indonesian Plaintiff suing a foreign corporation for its negligence or product defect in [an] Indonesia Court." And the record does not reflect that Lumenta submitted anything in the trial court to explain the applicability of "Article 118 of HIR" to this case.[9]

---

[9] Although Indiarti sued Bell in Texas and appealed the district court's summary judgment entered against her, after her case had been "dismissed twice for want of jurisdiction in Indonesia," the grounds for the dismissal were not discussed in the opinion of the court of appeals. *See Idniarti v. Bell Helicopter Textron, Inc.*, No. 02-12-00045-CV, 2013 WL 1908291, at *1 (Tex. App.—Fort Worth May 9, 2013,

15

Appellees presented evidence demonstrating that Indonesia will allow Lumenta recovery on her claims. Thus, the trial court could have reasonably concluded that Indonesia is an adequate alternative forum. *See Gonzales*, 196 F. Supp. 2d at 489; *see also Berg v. AMF Inc.*, 29 S.W.3d 212, 217 (Tex. App.— Houston [14th Dist.] 2000, no pet.) (concluding appellees demonstrated adequate remedy under Canadian law because it allowed for some recovery).

### *Private and Public Interest Factors*

Lumenta next argues that the balance of the pertinent private and public interest factors weigh in favor of Texas as the appropriate forum because there are a greater number of "key witnesses" in the United States, the helicopter was designed and manufactured in Texas and was subject to United States Safety regulations, and she will obtain a more expedient resolution of her suit in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(5).

Generally, the private interest factors that are to be considered are the relative ease of access to proof, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining willing witnesses, the possibility of viewing the premises, and other practical problems that make a trial easy, expeditious, and inexpensive. *Gen. Elec.*, 271 S.W.3d at 691 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947)); *In re Omega*

---

pet. denied) (mem. op.). We note that the spelling of the plaintiff's name, Rukmi Indah Indiarti, or Idniarti, varies among the filings and judicial documents.

*Protein, Inc.*, 288 S.W.3d 17, 20 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). The public interest factors to be considered are the administrative difficulties related to court congestion, burdening the people of a community with jury duty when they have no relation to the litigation, local interest in having localized controversies decided at home, and the appropriateness of trying a case in the forum that is at home with the law that governs the case. *Gen. Elec.*, 271 S.W.3d at 691 (citing *Gilbert*, 330 U.S. at 508–09, 67 S. Ct. 839); *Omega Protein*, 288 S.W.3d at 21. Although the private and public interest factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive" and "none . . . can be said to be of dispositive weight." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

Appellees assert that Indonesia is the forum with the most ease of access to proof. It is undisputed that Indonesia is the site of the crash; the helicopter wreckage; the INTSC representatives, who conducted the official investigation of the crash and recovery of the wreckage; the Manado Airport employees, who tracked and communicated with the helicopter pilot; the pilot records and flight logs; the mechanics, who serviced the helicopter, and their maintenance records; and the companies that owned, chartered, maintained, and operated the helicopter, along with their records.

Lumenta asserts that the primary liability issue in her case is whether the instrumentation and navigation systems of the helicopter were "working properly" at the time of the crash. Therefore, the "key to the liability phase of the case are the Bell witnesses, who know the design, manufacture[,] and assembly of the Power Train and the Navigation[] and Instrumentation system of the helicopter." She further asserts that all of these witnesses are "Americans, living in the U.S.," and she directs us to Childers's letter, in which he generally opines that there will "most probably be a larger number of relevant witnesses who reside in the United States."

In support of her argument that Texas is the forum with the most significant connection to the lawsuit, Lumenta relies on *Vinson v. American Bureau of Shipping*. 318 S.W.3d 34. In *Vinson*, the plaintiff, who was a United States citizen and an Alabama resident, suffered personal injuries when a derrick collapsed while he was working on a drilling rig located on a barge in a Singapore shipyard. *Id.* at 38. The plaintiff sued his employer, which also owned the rig, and two of the derrick manufacturers—all United States companies headquartered in Houston—for products liability and negligence. *Id.* at 39. The defendants moved to dismiss the lawsuit on the ground of forum non conveniens, asserting that Singapore, and not Houston, was the forum with the most significant connection to the lawsuit. *Id.* at 38–39. On appeal from the trial court's dismissal, we held that although

18

Singapore constituted an adequate alternate forum, the private and public interest factors weighed in favor of the Houston forum. *Id.* at 44, 53. We explained that the plaintiff was a United States citizen suing three Houston-based companies for injuries he sustained on a vessel that happened to be in Singapore at the time of his injuries, but was, at the time of trial, located in the Gulf of Mexico. *Id.* at 46. Further, the derrick collapse was investigated by a Houston firm and the relevant witnesses and documents were located in Houston. *Id.* at 48. And, nearly all of the plaintiff's medical care took place in Texas and Alabama. *Id.* Notably, the employer/owner-defendant conceded that there were no witnesses in Singapore with relevant knowledge of the collapse, the design or fabrication of the derrick, the condition of the barge, or the investigation. *Id.* And the evidence showed that the witnesses employed by the defendants frequently traveled between Texas and Singapore. *Id.* at 49.

Here, unlike in *Vinson*, it is undisputed that Lumenta, the plaintiff, is a citizen of the Republic of Indonesia, as was the decedent; the crash occurred in Indonesia; Indonesian officials conducted the investigation of the crash and recovered the wreckage, which remains in Indonesia; the mechanics, who maintained the helicopter, and the maintenance records, are in Indonesia; the Manado Airport employees, who tracked and communicated with the pilot of the helicopter, which crashed three minutes after take-off, are in Indonesia; and the

19

companies that owned, chartered, maintained, and operated the helicopter, and their records, are in Indonesia.

In *In re Air Crash Disaster Over Makassar Strait, Sulawesi*, an Indonesian airliner, traveling between the islands of Java and Sulawesi, disappeared over the Makassar Strait. No. 09-cv-3805, 2011 WL 91037, at *1 (N.D. Ill. Jan. 11, 2011). When the wreckage was located nine days later, all 102 passengers and crew on board were presumed dead. *Id.* The Indonesian government, with assistance from the United States National Transportation Safety Board, conducted an investigation and issued a report citing "inadequate maintenance" and "pilot error" as contributing causes of the crash. *Id.* The investigators concluded that the airplane's Inertial Reference System ("IRS") had malfunctioned, which led to pilot error. *Id.* Representatives of the decedents brought, in the United States District Court, claims, alleging strict products liability and negligence, against several United States corporations, including the manufacturer of the airplane, the manufacturer of its IRS, a company in charge of its maintenance, and the owner and lessor of the plane. *Id.* at *2. None of the decedents were United States citizens, nor were their representatives. *Id.*

The *Air Crash* defendants moved to dismiss the suit on the ground that Indonesia was the more convenient forum, asserting that much of the essential evidence was in Indonesia. *Id.* at *3. The plaintiffs argued that the United States

was the more convenient forum because crucial evidence, including documents pertaining to the design and manufacture of the plane and its component parts, as well as testimony from those individuals who participated in these processes, were located in the United States. *Id.* at *6. The court concluded that the plaintiffs' argument "carried little weight" because the defendants had agreed to make available all evidence in their possession at the direction of the Indonesian forum. *Id.* (citing *Clerides v. Boeing Co.*, 534 F.3d 623, 629 (7th Cir. 2008)); *see also Piper Aircraft*, 454 U.S. at 258–59, 102 S. Ct. at 267 (upholding forum non conveniens dismissal in case arising from plane crash in Scotland, notwithstanding evidence relevant to products-liability claims in U.S. manufacturer's possession). The court noted that, conversely, those in possession of much of the remaining proof, namely, the owner of the airplane and the Indonesian governmental investigators, were in Indonesia and had not agreed to produce evidence in the litigation. *Id.*

The court further noted that the *Air Crash* plaintiffs alleged that the airplane had not been adequately maintained and almost all of the evidence about the airline's maintenance operations, and the government's investigation thereof, was in Indonesia. *Id.* Thus, the court concluded that the location of the sources of proof weighed in favor of the Indonesian forum. *Id.* (citing *Clerides*, 534 F.3d at

21

629 (reaching similar conclusion where evidence related to airline, flight crew, and post-accident investigation in foreign forum)).

Here, as in *Air Crash*, although Lumenta asserts that the crucial evidence concerns the design and manufacture of the helicopter and its component parts, Bell stipulated in the trial court that, "to the extent [it] is in possession, custody, or control of any witnesses or evidence relevant to [Lumenta's] causes of action," it will "make such evidence and witnesses available to [Lumenta] in Indonesia." *See id.* Although Lumenta stipulated that she would "pay all the costs of travel of defendants' counsel to go to Indonesia for depositions," this would not resolve the matter of the costs pertaining to the Indonesian witnesses' travel to Texas.

Also, as in *Air Crash*, Lumenta asserts that the primary issue presented in this case is whether the "instrumentation or navigation system of the helicopter" was "working properly" at the time of the crash. *See id.* And again, we note that the mechanics, who maintained the helicopter; the maintenance records; the companies that owned, maintained, and operated the helicopter, and their records; and the Indonesian officials who conducted the investigation of the crash, are in Indonesia. *See id.* Thus, the location of the sources of proof weighs in favor of the Indonesian forum.

Similarly, the location of numerous witnesses beyond the compulsory process of Texas courts weighs in favor of the Indonesian forum. *See id.* at *7; *see*

22

*also Gen. Elec.*, 271 S.W.3d at 691–92 (citing TEX. R. CIV. P. 176.3 ("A person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served.")).  Appellees assert that although "compulsory process may be available under the Hague Convention, such process is time consuming, uncertain as to result, and unlikely to bear fruit in time for trial." *See Pirelli Tire*, 247 S.W.3d at 678–79.  We note that Indonesia is not a signatory to the Hague Convention on Service Abroad. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, art. 1; *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S. Ct. 2104, 2107 (1988) (noting purpose of Hague Service Convention is "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice").

Conversely, Andy testified that Indonesian courts have the power to compel the appearance of the Indonesian witnesses.  And the witnesses with knowledge of the design and manufacture of the helicopter who reside in the United States will be available in the Indonesian forum in light of appellees' willingness to produce them. *See Air Crash*, 2011 WL 91037, at *7.  Thus, the comparative ability to produce the relevant witnesses also weighs in favor of the Indonesian forum. *See id.* (citing *Piper Aircraft*, 454 U.S. at 242, 102 S. Ct. at 259 (noting importance of

witnesses who could testify regarding maintenance of aircraft, training of pilot, and investigation of crash)).

Further, appellees assert that there remain named defendants in Indonesia who have not been served, "making it impossible for Bell to seek indemnification against them for their alleged contribution to [Lumenta's] damages." *See Air Crash*, 2011 WL 91037, at *7 (noting no personal jurisdiction because airline had never operated in United States). In *Piper Aircraft*, as here, the plaintiffs alleged that manufacturing defects caused a plane crash; the defendants asserted that pilot error and owner negligence caused the crash. 454 U.S. at 259, 102 S. Ct. at 267. Because the defendants could implead the airplane's owner in the foreign jurisdiction, rather than having to seek indemnity in a separate suit, the Supreme Court held that "the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in [the foreign forum]." *Id.* Thus, this factor weighs in favor of an Indonesian forum.

Appellees also assert that the "cost, time, and scheduling difficulties to obtain evidence and present witness testimony would be far greater if the case were tried in Texas." *See In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921, 926 (Tex. 2010). The United States Court of Appeals for the Fifth Circuit has held that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses

increases in direct relationship to the additional distance to be traveled." *In re Volkswagon AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). The court noted that it is an "obvious conclusion" that it is more convenient for witnesses to testify at home and "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id*. at 205. Here, as to the witnesses identified by appellees, it is apparent that it would be more convenient for them if this case is tried in Indonesia. Moreover, Lumenta, herself, currently resides in Indonesia. And, again, the witnesses with knowledge of the design and manufacture of the helicopter who reside in the United States will be available in the Indonesian forum in light of appellees' willingness to produce them. *See Air Crash*, 2011 WL 91037, at *7.

Finally, in regard to the possibility of viewing the premises, given that the crash occurred in Indonesia, this factor weighs in favor of the Indonesian forum. And Andy testified that the Indonesian courts will provide for inspection of the premises.

Lumenta argues that appellees did not "provide enough information to enable the [trial court] to balance the parties' interest[s]" because they did not "furnish the [trial court] with a list of witnesses, their location, the substance of

25

their expected testimony, and the costs of producing such witnesses for depositions [and] trial." However, the forum non conveniens statute does not place the burden of proof on either party. *ENSCO Offshore Int'l*, 311 S.W.3d at 927. We note that neither party provided the trial court with a list of specific witnesses, the substance of their testimony, or the costs of producing such witnesses. In *General Electric*, the Texas Supreme Court explained that details regarding which witnesses would be called and what evidence would be unavailable is not necessary in cases, as here, in which the "practical problems of trying a personal injury case hundreds of miles from the scene of the occurrence, the place where the lay witnesses reside, and where most other evidence is located is manifest." 271 S.W.3d at 691.

Lumenta further argues that the fact that appellees are domiciled in Texas is "entitled to significant weight" because it is fair to infer that one's own domicile is not an inconvenient place to be sued. The presence of a corporate headquarters in Texas, however, is an insufficient basis for keeping a non-resident's suit in Texas when, as here, all of the other factors favor another forum. *See Omega Protein*, 288 S.W.3d at 23; *see also Volkswagen of Am.*, 545 F.3d at 315 (noting no single factor of dispositive weight).

In sum, the record evidence establishes that most of the relevant documents and witnesses in this lawsuit are located in Indonesia. Thus, we conclude that the pertinent private interest factors weigh heavily in favor of an Indonesian forum.

In regard to the pertinent public interest factors, Lumenta asserts, without directing us to any evidence, that "[t]here is no doubt that this case can be more quickly . . . resolved in Court in Texas than it can in the Courts of Indonesia." Andy testified that proceedings in the Indonesian district courts "usually take 6 months to complete," and "[c]assation and civil review proceedings usually take 1 to 2 years."

In regard to local interest, several factors indicate that Indonesian citizens have a greater interest in this litigation: the crash giving rise to this lawsuit occurred in Indonesia; the helicopter was owned and operated by an Indonesian entity, subject to Indonesian flight regulations, and predominantly carrying Indonesian citizens; an Indonesian governmental entity recovered the wreckage and investigated the crash; and this lawsuit involves redress for a citizen of Indonesia. Lumenta argues that the Texas forum has local interest in her lawsuit because the helicopter, which she alleges was defective, was manufactured in Texas and subject to United States regulations. That an allegedly defective product is available does not create a stake in the resolution of this controversy. *See Volkswagen of Am.*, 545 F.3d at 318. That the citizens of Indonesia have extensive connections with the events that gave rise to this suit weighs in favor of dismissal.

Finally, we note that to the extent that there exists a conflict and a choice of law question in this case that needs to be untangled, either forum, Texas or Indonesia, would likely have to undertake such an analysis.

Accordingly, the trial court could have reasonably concluded that the pertinent public interest factors weigh in favor of Indonesia as the appropriate forum.

### Remaining Considerations

Appellees assert that, without the necessary evidence and testimony, and the ability to seek redress from other named defendants, their defense will be prejudiced, resulting in substantial injustice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(3); *Gen. Elec.*, 271 S.W.3d at 689 ("[R]equiring parties to litigate a case such as this in Texas until it becomes clear that it is impossible to defend the case due to unavailability of evidence and fact witnesses because they are beyond the reach of compulsory process is a waste of private and public resources."). And the record does not demonstrate that Lumenta would suffer substantial injustice as a result of the trial of her claims in Indonesia. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(3).

Lumenta argues that the trial court's dismissal will result in unreasonable duplication of litigation because it results in two lawsuits: the Texas case against the nonmoving defendants (Honeywell and NAT) would remain pending while a

28

new suit would be filed against appellees in Indonesia. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(6). However, in *General Electric*, the Texas Supreme Court held that the extent to which the trial court's dismissal of part of an action for forum non conveniens resulted in "fragmented or duplicated" litigation did not turn on the trial court's decision to grant the motions. 271 S.W.3d at 692–93. Rather, it depended on the plaintiff's own decision to file suits outside the proper forum. *Id.* at 693.

Accordingly, the trial court could have reasonably concluded that the remaining considerations weigh in favor of Indonesia as the appropriate forum.

In sum, the trial court could have reasonably concluded that Indonesia is an adequate alternative forum and the pertinent public and private interest factors, and the remaining considerations, weigh in favor of Indonesia as the appropriate forum. Accordingly, we hold that the trial court did not err in granting appellees' motion to dismiss Lumenta's claims under the doctrine of forum non conveniens. *See Gen. Elec.*, 271 S.W.3d at 685.

We overrule Lumenta's second, third, and fourth issues.

### Discovery and Motion for Continuance

In her first issue, Lumenta argues that the trial court erred in "granting appellees' motion for protection and, at the same time, denying [her] motion for

continuance" because the "net effect" was that she was not given a "reasonable opportunity for discovery and development of the FNC facts."

We review a trial court's decision to deny a motion for continuance for a clear abuse of discretion. *Marchand*, 83 S.W.3d at 800. A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

A trial court may rule on a forum non conveniens motion only after a hearing, with notice to all parties not less than 21 days before the date specified for the hearing. TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(d). It "shall afford all of the parties ample opportunity to obtain discovery of information relevant to the motion prior to a hearing." *Id.* A trial court may, however, "in the interest of justice," issue a protective order to "protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." TEX. R. CIV. P. 192.6(b); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999). Trial courts should limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Alford Chevrolet-Geo*, 997 S.W.2d at 181 (citing TEX. R. CIV. P. 192.4(b)). And a trial court may

limit discovery pending resolution of threshold issues, such as forum non conveniens. *Id.*; *see also Piper Aircraft*, 454 U.S. at 258, 102 S. Ct. at 267 (noting requirement of extensive investigation would defeat purpose of forum non conveniens motion). Although a trial court has broad discretion to schedule and define the scope of discovery, it abuses its discretion if it acts unreasonably. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998).

Here, Lumenta filed the instant suit on August 2, 2013 and then served appellees with requests for disclosure. And she served Bell with interrogatories and requests for production and admissions. In response, Bell produced Andy's affidavit and the INTSC crash reports. On November 20, 2013, appellees filed motions for protection and for dismissal of Lumenta's claims on the ground of forum non conveniens.

The record shows that the trial court, at the December 16, 2013 hearing on appellees' motion for protection, orally granted the motion "with regard to merit discovery on the case in its entirety," but "except[ed] that for discovery related to forum non conveniens." The trial court instructed the parties to immediately convene and determine "what's forum non, and what's merit." The parties agreed to meet preliminarily and that Lumenta would later submit interrogatories asking appellees to list their witnesses. The trial court approved, noting that it "would work with [the parties] if there [was] something that [was] intertwined" and needed

to be "flush[ed] out." Bell asserts that on December 30, 2013, it responded to Lumenta's supplemental discovery requests, and, thereafter, she served no new written discovery.

On February 6, 2014, Lumenta, in Texas, took the deposition of Harold Barrentine, a Bell safety investigator, who had previously flown to Indonesia at the request of the INTSC to assist in the investigation of the crash and was the only U.S. resident involved in the investigation. The next day, Lumenta filed a verified motion to continue the hearing on appellees' FNC motion, requesting forty-five days to review Barrentine's testimony and respond to appellees' FNC motion.

On February 10, 2014, Lumenta filed a response to appellees' FNC motion and a supplemental motion for continuance, requesting ninety days to "submit a detail[ed] record of the *Indiarti* holdings." Also, on February 10, 2014, the trial court granted appellees' FNC motion and dismissed Lumenta's claims.

Lumenta argues that the trial court erred in granting appellees' motion for protection because it "ke[pt] [her] from engaging in necessary discovery on the FNC motion." The record shows, however, that the trial court expressly granted appellees' motion for protection "with regard to merit discovery on the case in its entirety," but "except[ed] that for discovery related to forum non conveniens." Thus, the trial court did not prohibit or restrict discovery related to the FNC motion.

Lumenta next argues that the trial court erred in denying her motion for continuance because "it is patently clear that [she] was not given adequate time for discovery." Childers, in his letter, which Lumenta attached to her supplemental motion, asserted that it would "take several months to examine the wreckage and interview the people associated with the manufacture, operation and maintenance of the helicopter, both in the United States and Indonesia." And Lumenta asserts that Barrentine "really knew nothing about the FNC merits," which "illustrates why [she] needed to depose other Bell witnesses from the U.S. and the [t]rial [c]ourt seriously erred in not letting [her] do so."

The record reflects that Lumenta, in October and November 2013, served appellees with written discovery requests. Bell asserts that it responded to her supplemental discovery requests on December 30, 2013, and thereafter she served no new written discovery. The record does not show that Lumenta ever filed a motion to compel or otherwise attempted to obtain any further written discovery. In January 2014, she noticed Barrentine's deposition, and the record does not reflect that she sought to depose any other witnesses. Further, Lumenta did not, in either her motion for continuance or supplement, specify the forum-non-conveniens-related discovery that needed to be completed. Rather, she globally sought more time and requested forty-five days to review Barrentine's testimony and respond to appellees' FNC motion, and ninety days to "submit a detail[ed]

33

record of the *Indiarti* holdings." Lumenta, in her motion for continuance, which she filed three days before the February 10, 2014 hearing on appellees' FNC motion, argued that she could not respond to appellees' FNC motion because "all of the Defendants" had "not yet responded fully" to her requests for production and she needed more time to review the transcript of Ballentine's deposition. However, the record shows that she filed her response to the FNC motion on February 10, 2014.

In support of her argument that the trial court erred in denying her motion for continuance, Lumenta relies on *McInnis v. Mallia*, 261 S.W.3d 197 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In *McInnis*, however, the issue presented was whether the trial court erred in granting the defendants a no-evidence summary judgment without affording the plaintiff an "adequate time for discovery" under the summary-judgment rules. *Id.* at 200 (applying TEX. R. CIV. P. 166a(i)). Generally, a summary judgment is a decision on the merits. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854–55 (Tex. 1995). Whereas, "forum non conveniens is a non-merits basis for dismissal because it is a determination that the merits of the claims should be decided elsewhere." *Schippers v. Mazak Props., Inc.*, 350 S.W.3d 294, 296 (Tex. App.—San Antonio 2011, pet. denied) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S. Ct. 1184, 1192 (2007)). And a motion to dismiss for forum

non conveniens does not call for a detailed development of the entire case. *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1380 n.17 (5th Cir. 1988). Rather, it merely requires "enough information to enable the [trial] court to balance the parties' interests." *Piper Aircraft*, 454 U.S. at 258, 102 S. Ct. at 267.

"The scope of discovery is largely within the discretion of the trial court." *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995). And we must defer to that discretion, absent abuse. *See Colonial Pipeline*, 968 S.W.2d at 941. Here, the trial court's decision to deny Lumenta's motion for continuance was not arbitrary or unreasonable and was not made without reference to guiding rules and principles. *See Marchand*, 83 S.W.3d at 800.

Accordingly, we hold that the trial court did not err in granting appellees' motion for protection and denying Lumenta's motion for continuance.

We overrule Lumenta's first issue.

## Conclusion

We affirm the order of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.